UNITED SHOE MACHINERY COMPANY *vs.* BRESNAHAN SHOE
MACHINERY COMPANY.

SAME *vs.* SAME.

SAME *vs.* SAME.

SAME *vs.* MAURICE V. BRESNAHAN.

Essex.    November 6, 1907. — January 22, 1908.

Present : KNOWLTON, C. J., LORING, BRALEY, & RUGG, JJ.

*Evidence*, Likely to distract attention of jury, Relevancy and materiality, Presumptions
and burden of proof, Of ownership.    *Agency*, Scope of authority.    *Practice, Civil*,
Conduct of trial, Exceptions.    *Replevin.    Estoppel.*

At the trial of an action of replevin for certain machines, it appeared that the
machines were protected by letters patent, that they had been in the possession
of one to whom the plaintiff had conveyed them under leases which recited
that they were patented, and one of the terms of which was that the lessee
should not transfer possession of the machines without the consent of the plaintiff.
There had been a fire in the factory of the lessee and the machines had been
damaged.    The defendant contended and introduced evidence tending to show
that there had been negotiations between the plaintiff and the lessee authorizing
the lessee to sell the machines as junk, and that under that authority they had
been sold to one who sold them to the defendant.    The plaintiff introduced evi-
dence tending to contradict that of the defendant, and offered the letters patent,
thirty-eight in number, as evidence affecting the probability of his consenting to
have the machines sold as junk.    Both parties throughout the trial assumed that
the machines were patented and referred to the fact in their arguments.    The
letters patent were long, complicated and elaborate, included drawings and spe-
cifications, and were full of technical terms, and the presiding judge excluded
them on the ground that they might mislead the jury more than they would
aid them.    *Held*, that, even if the evidence offered was competent, the plaintiff
was not harmed by its exclusion, and that the ruling of the judge was warranted
for the reason which he gave.

At the trial of an action of replevin for certain machines, a question at issue was
whether the plaintiff had given to one to whom he had leased the machines au-
thority, after a fire in the lessee's factory in which the machines were damaged,
to sell them as junk, and there was evidence, introduced by the defendant but
controverted by the plaintiff, tending to show that the lessee had a conversation
with one W., in which he was told that, if one S., after examination of the
machines on behalf of the plaintiff, told the lessee that they were worthless,
the lessee might sell them as junk.    The plaintiff was a corporation and W.
was its assistant general manager.    There was evidence that his "duties were
not prescribed," but were "looking after the general management of the busi-
ness," and there was testimony of W. and admissions of the plaintiff tending to
show that he had authority from the plaintiff to do whatever he did in the
transaction with the lessee.    The defendant, after introducing evidence of S.'s

examining the machines, was then allowed, subject to exception by the plaintiff, to show that S. said to the lessee that he did not think that the machines were of any value, the presiding judge admitting the testimony " only so far as it was within the scope of the authority given by W." *Held*, that there was evidence that W. had authority to delegate authority to S., that he had done so, and that S. had acted within the authority thus delegated to him ; and, therefore, that the evidence objected to was admissible.

Where a plaintiff excepted to the admission of evidence at a trial, and, in his ruling admitting it, the presiding judge stated that it was a part of the history of the transaction between the parties and might be dealt with later in the trial by striking it out or by giving instructions with regard to it, and later in the trial a witness for the plaintiff in direct examination gave evidence of the same kind and was cross-examined fully upon the subject, and no motion was made by the plaintiff to strike out the evidence or for instructions regarding it, the exception was overruled.

Rulings requested at the trial of a case which were inapplicable because the charge to the jury removed from their consideration the subject to which the rulings referred were *held* rightly to have been refused.

At the trial of an action of replevin for certain machines, it appeared that the plaintiff formerly had owned the machines and had leased them to one for use in his factory, and that the factory had burned and the machines been damaged. There was evidence tending to show that one having authority to act for the plaintiff had told the lessee that, if a certain person should say that the machines were worthless, the lessee might sell them as junk, that the person designated did say that the machines were worthless, and that the lessee sold them as junk to one from whom the defendant purchased them in good faith. *Held*, that there was evidence to warrant a submission of the case to the jury and to warrant them in finding for the defendant.

If one stands by and, without disclosing his ownership, allows his property to be sold to an innocent purchaser for value, he is estopped from claiming it afterwards.

Where, at the trial of an action of replevin, the plaintiff introduces evidence from which the jury might draw inferences which would warrant them in finding for the plaintiff, but which, without such inferences, would not warrant a finding for the plaintiff, and the defendant introduces no evidence, the presiding judge rightly may refuse to rule that, as a matter of law, the plaintiff is entitled to the property replevied.

At the trial of an action of replevin, the plaintiff introduced evidence from which the jury might draw inferences which would warrant a verdict for the plaintiff. The defendant introduced no evidence. The presiding judge instructed the jury : " The possession of the property by the defendant and exercising rights of ownership over it is evidence of ownership to consider." *Held*, that the instruction was correct.

FOUR ACTIONS OF REPLEVIN.   Writs in the Superior Court for the county of Essex dated respectively January 2, 1904, December 30, 1903, January 1, 1904 and January 1, 1904.

The four actions were tried together before *White*, J.   The property described in the writs in the first three actions and taken by the officer thereunder were various pieces of machin-

ery which once was in the possession of and owned by the plaintiff and which it had delivered under leases to two firms named F. W. Lord and Company and Bowers and Shaw, and to the latter's predecessor. The leases were in evidence, and, besides the terms described in the opinion, contained stipulations to the effect that neither they nor any of the rights of the lessees thereunder were assignable except by consent in writing of the plaintiff, and that the machinery was to be " used only by the lessee himself or by operatives in his direct employ and only in the factory " then " occupied by him."

Some of these leases contained the following clause: " The lessee shall at his own expense insure against loss by fire and keep insured to the full value thereof the said machinery, and in case of loss shall pay forthwith to the lessor a sum equal to the full amount of the loss occasioned to the lessor." From other leases this clause was omitted because, so far as they were concerned, the plaintiff had received full protection against fire through a deposit (called a " lease premium " or " initial license premium ") made at the outset by the lessee and representing the full value of the machines. Whenever this initial premium was not taken, the insurance clause was inserted in the lease.

The factories containing the machinery were burned. Thereafter there were interviews or an interview between members of the firms of F. W. Lord and Company and of Bowers and Shaw and one Willson, assistant general manager of the plaintiff, with regard to the disposition of the machinery. The evidence as to what was said at such interview or interviews was conflicting, but the evidence introduced by the defendant tended to show that there were several interviews, that, at the first, Willson had said that, if the machinery was not good for anything, the plaintiff did not want it, and that he would send a man to examine it; that later a man went from the plaintiff to examine the machinery; that, in the meantime, bills for the insurance value of such of the machinery as was not insured had been sent to the two firms; that one of the firm of F. W. Lord and Company again interviewed Willson and paid the bill which had been rendered to his firm, and Willson at that time stated, upon Lord's inquiring " what he should do with the remains " that he was not quite satisfied as to the report of the inspector, but that

"he would send Mr. Sanborn, their expert, there, and that, if Sanborn pronounced the machines worthless," Lord "should sell them as junk." Willson testified that "when it was proved as junk, it might be disposed of by Mr. Lord and Mr. Bowers." Besides the testimony as to the authority of Willson which is stated in the opinion, Willson himself testified that he did not think he did anything in the matter of the machines in question that he did not have authority to do.

Lord further testified that, after the talk with Willson in which he said he would send Sanborn to look at the machines, Sanborn did so. Subject to exception by the plaintiff, he then stated that Sanborn told him and Bowers that the machinery in its then state was worthless.

Thereafter F. W. Lord and Company and Bowers and Shaw sold the machines as junk. It was with regard to that sale that the presiding judge propounded to the jury the question, "Did Charles H. Willson give to F. W. Ford and Company and Bowers and Shaw an unrestricted right to sell the materials which had passed through the fire?" They answered "Yes."

The fire at the factories occurred on February 6, 1903. The testimony of Lord was that the first visit to the factories by a representative of the plaintiff was within a week of the fire, and that the visit of Sanborn was seven or eight days after that. The bills for "insurance valuation," hereinbefore referred to, were rendered by the plaintiff on February 11.

The lessees sold the machines as junk to one Rowan, who moved it away between February 20 and March 5, Rowan's best recollection of the date being that it was about February 28. Rowan sold to the defendant, who repaired the machinery, purchasing new parts therefor from the plaintiff.

There also was in evidence correspondence between the Boston office of the plaintiff, and the Lynn office, from which it appeared that, in answer to an inquiry by the Lynn office on February 10, "What is the custom in reference to a fire of this kind, are we to go to this factory and see that the machines are junked or returned, after the insurance companies have made proper adjustment?", the Boston office replied on February 11, "We are in receipt of your favor of the 10th inst, advising us that the machines leased to Bowers & Shaw and F. W. Lord

were totally destroyed by the recent fire. Our usual policy in cases of this kind is to render bill for insurance value on the machines and await the adjustment of the loss by the insurance inspectors, when we will ask you to see that the machines are junked (that is, if they are beyond repair,) and report to us "; and that there was no further correspondence until after representatives of the Lynn office had gone to the factories on March 4 and found the machines gone. Willson testified that, after the plaintiff knew that Bowers and Shaw had sold the machines, namely, on March 9, it received from them payment of the bill for insurance value which it had rendered to them. The bill submitted to F. W. Lord and Company was paid by them on February 19.

During the course of the trial, a tabulated list was prepared of the articles included in the officer's returns, and was introduced as an exhibit. The plaintiff's counsel objected to the admission in evidence of the last column of this list which was headed "Lease Premium." The defendant's counsel thereupon stated that he proposed to show that the lease premiums represented sums paid to the plaintiff or its predecessors, which in each in-stance represented the full value of the machines; that this payment was in accordance with the practice of the plaintiff, and took the place of insurance as to these articles, and that the evidence was offered as part of the history of the machines. The ruling of the presiding judge and the further course of the trial with regard to this evidence are stated in the third paragraph of the opinion. The provisions in the leases with regard to insurance are hereinbefore set forth.

The evidence as to the last case was that predecessors of the plaintiff had leased to certain parties by numbers machines called a grip slugger and corrugated tackers in 1892 and 1893, one condition of the leases being that the lessee should not transfer the property or assign his rights under the lease except by consent in writing of the lessor, but there was no further evidence of the history of the machines covered by the leases except that certain machines bearing the same numbers and having the same general description were taken from the defendant's possession by the officer acting under the replevin writ. The defendant introduced no evidence.

At the close of the evidence, the plaintiff requested the presiding judge to rule, in the first three cases, as follows:

1. On all the evidence the plaintiff is entitled to a verdict in this action.

2. On all the evidence the plaintiff is entitled to a verdict in this action as to any and all of the machines seized therein for which the plaintiff has not received the insurance.

3. If the plaintiff had title to the machines seized in this action at the time of the fire, it does not appear in evidence that anything has occurred to defeat that title, and the plaintiff is entitled to recover.

4. If the plaintiff had title to the machines seized in this action at the time of the fire, it does not appear in evidence that anything has occurred to defeat the title to any of such machines for which the plaintiff has not received the amount of the insurance, and as to such of said machines in any event the plaintiff is entitled to a verdict.

5 If the insurance money was accepted solely because of a mistaken belief that the machines covered by the insurance had been totally destroyed, but in fact they had not been, such acceptance would not destroy such title as the plaintiff had to the machines so insured, in favor of the defendant.

6. If the amount of the insurance was accepted by the plaintiff solely because of a mistaken belief that the machines insured had been totally destroyed, but in fact they had not been, and this belief was caused by the statement of the lessee or lessees that such machines had been totally destroyed, then the acceptance of the amount of the insurance would not have the effect of destroying such title as the plaintiff then had in favor of the lessee or lessees, or in favor of the defendant.

7. The evidence does not warrant the finding that the plaintiff has abandoned any of the machines seized in this action.

8. The evidence does not warrant the finding that the plaintiff has abandoned any of the machines seized in this action for which the plaintiff has not received the amount of the insurance.

9. The evidence does not warrant the finding that the plaintiff is estopped to claim such rights as it had to any of the articles seized in this action.

The requests were refused, the presiding judge stating that

requests numbered five and six were refused as inapplicable on the ground that the receipt of the insurance money would in no event pass title to the property by operation of law ; and the plaintiff excepted.

In the last case, the plaintiff requested the presiding judge to rule (1) that on all the evidence the plaintiff was entitled to the grip slugger and corrugated tackers, and (2) that the evidence, if believed, entitled the plaintiff to them. These requests also were refused, and the plaintiff excepted:

The following portion of the charge of the presiding judge with regard to the first three cases was excepted to by the plaintiff :

"Now, there is evidence here that Lord told Willson that he was going to rebuild, and that this stuff must be out of the way, and that he wanted to get it out of the way and he wanted Willson's opinion as to whether it was worth more for junk or whether it was worth more to make into serviceable machinery. Now, if the plaintiff knew that this property was going to be sold and wanted to exercise any further rights of ownership upon it, knowing that rights of other parties might intervene, it was its duty to act within a reasonable time, and it is for you to say whether it took any action within a reasonable time or whether Lord and the other firm acted in unreasonable haste in getting rid of the property and deprived the plaintiff of the opportunity of reducing it to junk, because if it knows its property is to be sold it should exercise such rights as it cares to exercise in seeing that the property is reduced to junk within a reasonable time."

The plaintiff also excepted to the first four lines of the following portion of the charge with regard to the last case :

" The possession is some evidence of title, some evidence of ownership. That is, it was found in the possession of the defendant, and possession of property and exercising rights of ownership over it is evidence of ownership for a jury to consider. The other evidence is for you to consider, — that is, the serial numbers and the fact of an ancient lease covering these. The burden is upon the plaintiff. If you should say that the plaintiff has sustained the burden, upon an item, then it is to have a verdict upon that item. If you should find that it has failed

to sustain that burden, then the defendant is entitled to a verdict."

Verdicts were returned for the defendant in each case.

*E. F. McClennen,* (*A. L. Fish* with him,) for the plaintiff.

*E. R. Thayer,* (*W. B. Murphy* with him,) for the defendant.

KNOWLTON, C. J.  The plaintiff's first exception was to the exclusion of the patents.  These were thirty-eight in number, each of which included drawings and specifications, some of which were long, complicated and elaborate.  The only ground upon which it can be contended that they were competent is that they affected the probability of the respective contentions of the parties as to the arrangements made between them.  It is argued that the plaintiff would be less likely to agree to an abandonment of patented machines, even if they were supposed to be ruined by fire, than to the abandonment of machines that were not patented.  The fact is undisputed that the machines were treated by the plaintiff as useless after the fire, and that they were paid for to the plaintiff by the insurance company as for a total loss.  If we assume that the evidence was competent, there is nothing to show that the plaintiff was harmed by the exclusion of it.  The leases on which the title of each party was founded were in evidence, and they recited that these articles were patented, and they contained elaborate provisions to protect the rights of the owners of the patents.  Both parties assumed that the machines were patented throughout the trial, and referred to that fact in argument.  There is nothing to show that the details of the patents would have strengthened the plaintiff's contention in this particular.  The judge excluded them as a matter of discretion, on the ground that they might mislead the jury more than they would aid them.  We are of opinion that he was right in his view of the effect that the reading of these long documents, full of technical terms, would be likely to have upon the trial, and, in the absence of anything to show that their details would have added anything material to the facts before the court, the exception must be overruled.

The statement of Sanborn to Lord, after looking over the property which had been through the fire, that he did not think it of any value, was admitted only so far as it was within the scope of the authority given by Willson, and not on any inde-

pendent ground. There was evidence of a conversation with Willson, the assistant general manager of the corporation, which would justify the admission of Sanborn's statement if Willson had authority to deal with these damaged machines by taking their full value as for a total loss and allowing the lessee to sell the material as junk. We are of opinion that there was evidence as to the nature of his duties, the method in which business of this kind was done by the plaintiff, and as to the subsequent conduct of the plaintiff in regard to the property, which well warranted a finding that he was authorized to do what the defendants contended that he did. He testified as to his duties, " Well, the duties are not prescribed; it is looking after the general management of the business." When the defendants asked him in cross-examination what was his salary, as bearing upon the importance of his position and the extent of his authority in the company, the plaintiff's counsel objected, and added, " I do not deny his authority. I said a moment ago that I conceded that he had authority to do everything that he said he did." We are of opinion that the testimony was competent.

The evidence in the schedule prepared by the parties, showing that lease premiums were paid to the plaintiffs to the full value of the machines in those cases in which the interest of the plaintiff was not covered by insurance, was admitted, in the first instance, as a part of the history of the machines in the arrangement of the parties, with a suggestion by the judge that it might be dealt with later by striking it out or giving instructions in regard to it. Afterwards the plaintiff, through the witness Willson, introduced evidence of the same kind, namely, that the " bills for insurance are confined to the machines that are put out without the initial license premium." The witness was cross-examined fully upon the subject. No request was made to have the evidence stricken out or any instruction given in regard to it. This evidence showed that the position of the plaintiff was substantially the same in the leases which contained the insurance clause as in those which did not, and it was properly admitted in explanation of the dealings of the parties in reference to the property.

The plaintiff's fifth and sixth requests for instructions were rightly refused on the ground that they were inapplicable to the

case as it was to be submitted to the jury.   Upon the instruction given, the jury were not permitted to find for the defendant on the ground that the acceptance of the insurance money would deprive the plaintiff of its title.

The plaintiff's first, second, third and fourth requests for instructions were rightly refused.   The jury's answer " Yes," to the question, " Did Charles H. Willson give to F. W. Lord and Company and Bowers and Shaw an unrestricted right to sell the materials which had passed through the fire?", which was well warranted by the testimony, taken in connection with the evidence of authority in Willson to give such a right, shows that neither of these requests could properly have been given.

The instruction that " if the plaintiff knew that this property was going to be sold and he wanted to exercise any further rights of ownership upon it, knowing that rights of other parties might intervene, it was his duty to do it within a reasonable time, and it is for you to say whether he took any action within a reasonable time," was correct.   This was simply an application of the principles which lie at the foundation of the law of estoppel.   It is a familiar rule that, if one stands by and allows his property to be sold to an innocent purchaser without disclosing his ownership, he is estopped from claiming it afterwards. The hypothetical case stated in the instruction was within the reason of this rule.

In the fourth case the judge rightly refused to instruct the jury that, if they believed the evidence, the plaintiff was entitled to the grip slugger and was also entitled to the corrugated tackers. The submission of the case to the jury upon the evidence was a ruling that the evidence would warrant a finding for the plaintiff.   We understand that the request was for a ruling, in substance, that the plaintiff was entitled to the property as matter of law, if the evidence was true.   With inferences of fact that might be drawn from the evidence, the plaintiff's case would have been made out; but the jury might or might not draw these inferences.   Without them the case was not proved.

The instruction in regard to possession was correct.   It is a familiar rule that possession of property, with the exercise of

rights of ownership over it, is some evidence of title. Ordinarily it makes a *prima facie* case for the proof of title by the possessor. If testimony is introduced to control it, the whole evidence is considered together to determine the true title, and possession, with the exercise of the usual rights of an owner, is not disregarded. In each of the cases the entry must be,

*Exceptions overruled.*