WILLIAM R. WEST & others *vs.* STATE STREET EXCHANGE.

Suffolk. October 22, 23, 1924. — January 10, 1925.

Present: RUGG, C.J., BRALEY, CROSBY, PIERCE, & SANDERSON, JJ.

*Negligence,* Of proprietor of safe deposit vault. *Agency,* Scope of authority. *Attorney at Law.*

Where, at the trial of an action by the executors of a will against the proprietor of safe deposit vaults for loss resulting from an attorney for the plaintiffs being given access when alone to a safe rented to the plaintiffs, when he purloined bonds which the plaintiffs were unable to recover, the evidence in its aspect most favorable to the plaintiffs tended to show that the safe was engaged with the defendant by the attorney, the plaintiffs approving of all arrangements of the attorney; that the arrangements made permitted the attorney to have access without the presence of any one else; that he was permitted to retain the key to the safe; and that all writings entered into with the defendant were by the attorney in behalf of the plaintiffs and confirmed the arrangements made as above described, a verdict for the defendants properly was ordered.

CONTRACT OR TORT for loss sustained by the plaintiffs as executors of the will of William Firth, late of Newton, by reason of alleged conduct of the defendant in wrongfully permitting Amos L. Hatheway to have access alone to the safety deposit box of the plaintiffs in the vaults of the defendant. Writ dated September 1, 1921.

In the Superior Court, the action was tried before *Lawton,* J. Material evidence is described in the opinion. At the close of the evidence, by order of the trial judge, a verdict was entered for the defendant. The judge thereupon reported the action to this court for determination.

*E. F. McClennen,* for the plaintiffs.

*C. F. Choate, Jr.,* (*W. E. Tucker* with him,) for the defendant.

BRALEY, J. The plaintiffs' exceptions to rulings on evidence not having been argued, are treated as waived, and the only question is, whether the verdict for the defendant was ordered rightly. It owns safe deposit vaults containing safes, each with a separate number and lock, which under the name of "State Street Safe Deposit Vaults" are rented to customers, who receive keys that cannot be used without the application of a pass key by the defendant. The executors of the will of William Firth, having paid the rent of safe numbered 2185 for one year, were given a receipt dated July 13, 1920, which stated, that the rental was " subject to the rules endorsed herein, all of which are by it agreed to and accepted." One of the rules provided, that " No one but the Renter or his Deputy, to be duly designated in writing on the records of the Vaults, or in case of death or other contingency, his legal representative to have access to the Safe." The safe "within a month preceding June 10, 1921," was unlocked by one Amos L. Hatheway, who purloined certain coupon bonds issued by the United States of the face value of $56,000, the property of the estate, which he pledged to secure his own obligations to holders for value without knowledge of the theft or of circumstances which should have put them upon inquiry. See *Pratt* v. *Higginson,* 230 Mass. 256. The plaintiffs allege that without their knowledge or assent, and in violation of the contract, the defend-

ant having permitted Hatheway to open the safe, is liable in damages for the breach. The answer in substance is a general denial.

The weight or preponderance of evidence might shift with varying aspects of the trial, but the burden of proof rested on the plaintiffs to maintain the issue presented by the pleadings. *Carroll* v. *Boston Elevated Railway*, 200 Mass. 527.

The " records " which contained the names of the renters, and of those who were permitted access to the safe, were in the usual course of business kept on cards by Henry H. Hinckley, the defendant's manager. While the card dated July 13, 1920, a copy of which is marked exhibit five, and signed only by the plaintiff Browne, bears on its face the notation, "Exs. Two to go," meaning, that two of the executors were to go together when the safe was unlocked, he testified without contradiction, that he knew the words were not then on the card, and there was evidence that they had been inserted June 10, 1921, at the request of the other two executors, who seem to have become suspicious of Hatheway's integrity. It is manifest on the testimony of Browne and of his coexecutors West and Smith, that Hatheway, who had acted as counsel for, and had prepared the will of the testator, was retained and employed by the four executors, Browne, West, Smith and Mrs. Firth, as " the proper person to look after " the business. He also on the resignation of Smith on November 20, 1920, was appointed to succeed him, but resigned February 7, 1921, and thereafter Browne, West and Mrs. Firth acted as executors. The meetings of the executors as well as of the trustees under the will were held at his office which was in the defendant's building, and he was entrusted with the entire management of affairs. By arrangement between themselves none of the executors except Browne could draw checks on the funds, which also were to be countersigned by Hatheway, who received the moneys, and made deposits in the name of the estate in a national bank and in a trust company. The result was, that Hatheway directed and controlled the settlement of the estate under the supervision of Browne. The executors,

Browne, West and Smith, having decided to purchase bonds, a discussion followed at Hatheway's office on July 9, 1920, about renting " a safe deposit box." The minutes of the meeting, which were kept by Hatheway who acted as secretary, show, that " Counsel was authorized to negotiate with banks holding deposits for payment of interest on undrawn balances and the hiring of a Safety Deposit Box for the deposit of securities was authorized." The history of subsequent events appears in the testimony of Browne, West and Smith, on which the plaintiff's case must rest. Browne testified, " Hatheway was not asked to get it. We knew afterwards he got it. Before I went over with the bonds I knew he had gotten the box. He told Mr. West and myself before we took the bonds over. We objected. Hatheway was doing the work any lawyer would do. He told us he obtained this box at the State Street Exchange . . . . We then had the bonds in our possession. Hatheway selected the safe deposit vault. . . . Then we went down with the $36,000 in bonds, Hatheway and I to the vault. Hatheway had the check in payment of the rent with him. The check was drawn in Hatheway's office before we went down. It was . . . in Hatheway's handwriting, except my signature." The check was drawn to the defendant's' manager and Hatheway received the receipt. "I did just what Hatheway asked me to do. I didn't ask for any writing defining the terms on which we had the box, or had access to it. I left that just as I found it, except for signing my name on the card. . . . I signed the card before we deposited the bonds. I asked Hinckley if he had also Hatheway's signature, and he said yes. I didn't look at it. I knew Hatheway had signed his name to something. I thought it was the same thing I signed, but I didn't look at it or make any further inquiry as to what the writings were which defined what rights we had to that box. Then I went into the vault with Hatheway. I am not able to say that it was not Hatheway's key that opened the box; at any rate I knew he had a key and I never took it from him . . . . He had gotten a box and had a key to it and kept it, and I allowed him to keep the key." He further testified, that on July 15, 1920, he had

told Hinckley he understood Hatheway had taken a box in the name of the estate, and " they wanted it fixed so that two would have to be present to enter.   Hinckley said ' all right.'   This talk . . . was at the time when Browne signed exhibit 5," and Hinckley also said, "they knew Hatheway and let him go and come as he pleased."   The evidence in the direct examination of the plaintiff West in so far as material was, that he understood that while Hatheway had a key, access to the box could only be had by Browne and Hatheway together.   But in cross-examination he admitted having written the defendant June 8, 1921, that he understood, "that either Mr. Browne or Amos L. Hatheway . . . has access to the estate securities."   The deposition of Smith in substance is that at the meeting of July 9, 1920, no objection was made to Hatheway " getting a box," nor was anything said as to " who should have the right to go to the box, or that Hatheway should be accompanied by one or more of the executors or trustees when he went to the box."

It is plain from the foregoing summary, that the executors knew Hatheway had procured the safe, received a key, and had " signed something," which, upon further inquiry by Browne when he was given the receipt of July 13, 1920, would have disclosed the card, exhibit 4, then of record, which in so far as material reads, (written portions being printed in italics):

Name *Estate of William Firth*
Address *A. L. H. 626 Building*
No. *2185* Date *July 13, 1920*
Height
Weight
Age
Complexion
Eyes
Reference *O. K. A. L. H.*
Signature *see back.*

It is signed on the back, " Amos L. Hatheway, Alexander S. Browne, Estate of William Firth by Amos L. Hatheway."

It is unnecessary to decide whether Hatheway on the relations existing between them and the action taken on July

9, 1920, had been expressly authorized by the executors to hire the safe. The unequivocal conduct of Browne, to whom must be imputed knowledge of all the circumstances disclosed by the evidence, shows full acquiescence in what Hatheway had done. The defendant, who acted in good faith relying on the records, had a right therefore to recognize Hatheway as a person having lawful access to the safe, until notified that his right had been revoked. *Foster* v. *Rockwell,* 104 Mass. 167, 172. *Harrod* v. *McDaniels,* 126 Mass. 413. *Auringer* v. *Cochrane,* 225 Mass. 273, 275. See *Rackemann* v. *Riverbank Improvement Co.* 167 Mass. 1, 4; 57 Am. St. Rep. 427.

The conclusion is the same if the receipt, and the records, which are incorporated by express reference, are treated, as the plaintiffs contend, as constituting a contract, which cannot be varied by parol evidence. *Abbott* v. *Frazier,* 240 Mass. 586, 593. *Dunbar* v. *Broomfield,* 247 Mass. 372, 384. The case at bar is plainly distinguishable from *DeFriest* v. *Bradley,* 192 Mass. 346, *Mears* v. *Smith,* 199 Mass. 319, *Glackin* v. *Bennett,* 226 Mass. 316, *Goyette* v. *C. V. Watson Co.* 245 Mass. 577, 588, 589. At the time the receipt was given, and payment accepted, Hatheway had been designated in writing on the records as a person who could have access to the safe, and the executors through Browne had knowledge of the rule, and also that Hatheway, having been thus designated, had received and retained a key. It follows under the contract, that he became the plaintiff's deputy. *Secoulsky* v. *Oceanic Steam Navigation Co.* 223 Mass. 465, 466.

The entry must be, judgment for the defendant on the verdict.

*So ordered.*