LIBERTY MUTUAL INSURANCE COMPANY vs. A. C. MARTINELLI
ROGERS PLASTIC CORPORATION & others.

Suffolk.    March 7, 1962. — June 7, 1962.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, KIRK, & SPIEGEL, JJ.

*Equity Pleading and Practice,* Findings by judge.

On conflicting evidence reported on appeal in a suit in equity involving
transfers of sundry checks payable to a corporation from it to a second
corporation by indorsement and delivery, it could not be said that the
judge was plainly wrong in finding, contrary to allegations that the
transfers of the checks were unauthorized and fraudulent diversions
from the first corporation by an employee thereof, that the transfers
constituted duly authorized loans by the first corporation to the second.

BILL IN EQUITY filed in the Superior Court on December 2,
1959.

The suit was heard by *Cahill,* J.

*Arthur T. Wasserman* (*Joseph Landis* with him) for the
A. C. Martinelli Rogers Plastic Corporation.

*Bertram A. Sugarman* (*Edward J. Barshak* with him)
for the plaintiff.

*Harold Katz* for the Ayer Chemicals, Inc. & others.

*Louis F. Eaton, Jr.* (*Brian T. Callahan* with him) for the
Merrimack Valley National Bank.

SPIEGEL, J.    The plaintiff brings this bill in equity under
G. L. c. 231A to determine the rights and liabilities between
all of the parties arising out of allegations by the defendant
A. C. Martinelli Rogers Plastic Corporation (hereinafter
called Rogers) that certain checks received by it from
various retail chain stores between about April 18, 1958,
and about February 6, 1959, were fraudulently diverted by
the defendant Albert C. Metcalf, its employee at that time,
to the defendant Ayer Chemicals, Inc. (hereinafter called
Ayer).    The defendant Arnold C. Martinelli was president,
treasurer, and general manager of Rogers during this
period.    The defendants Barney and Maurice Shinberg
were officers and sole stockholders of Ayer.    By amend-

ment, the Puritan Chemical Corp. (hereinafter called Puritan) was made a party defendant. The plaintiff (hereinafter called Liberty) alleged that Puritan acquired the assets of Ayer "with full notice and knowledge of the claims of various" defendants against Ayer and "subject to said claims." Rogers filed a counterclaim alleging that Liberty owes it the sum of $50,000 together with interest thereon from May 8, 1959, under a policy of insurance which covered Rogers against the "dishonest or fraudulent" acts of Metcalf. The counterclaim also alleges that the defendant Merrimack Valley National Bank (hereinafter called Merrimack), to whom the checks were indorsed and delivered by Ayer, "wrongfully credited the proceeds of said checks" to the account of Ayer and, therefore, Merrimack is liable to Rogers in the sum of $54,090.33 together with interest thereon less any sum paid to it by Liberty. The counterclaim also alleges that it is owed the same sum of money by Ayer, less such amounts as are paid to it by Liberty and Merrimack. Rogers also alleges that the defendants Barney Shinberg and Maurice Shinberg are jointly and severally liable to it in the same sum of money less the sums paid to it by Liberty, Merrimack, and Ayer.

The suit was tried before a judge of the Superior Court who made findings of fact and ordered the entry of a final decree adverse to Rogers. The case is before us on appeal by Rogers from this decree.

The facts as found by the trial judge are herewith summarized. Between April 18, 1958, and February 6, 1959, forty-two checks totaling $54,090.33 were received by Rogers from corporations to which it had sold merchandise. These checks were made "payable to Rogers Plastic Corporation (original name of Rogers) and were drawn on various banks outside" of Massachusetts. Each check bore the following two indorsements:

"Pay to the order of Ayer Chemicals, Inc.
Rogers Plastic Corp."
and
"Ayer Chemicals, Inc.,
For deposit only."

Three of the checks "bore the transfer endorsement in typewritten words.  All other transfer and all deposit endorsements were by rubber stamp."

"All of these checks were delivered by Metcalf to Barney [Shinberg], who placed all transfer and deposit endorsements thereon with the full knowledge and consent of Metcalf acting for Martinelli.  Barney, or someone acting for him, including at times his brother, Maurice, deposited said checks . . . to the credit of the account of Ayer at The Bank [Merrimack], and the proceeds of these were credited by The Bank to the account of Ayer.  The rubber stamp which was used to make the transfer endorsements was purchased by Ayer."

Merrimack had no knowledge or information and made no inquiry regarding the genuineness of the indorsements nor of the authority of the person who placed the indorsements on the checks.  It was Merrimack's practice "to credit the proceeds of checks deposited by its customers to their accounts, relying only upon the deposit endorsements of said customers."

Upon receipt of each check Ayer entered the amount in its books of account as a loan from Rogers.  Ayer used the proceeds for the "normal and proper operations of its business."  None of these amounts has ever been repaid by Ayer to Rogers.

Metcalf did not receive any of the proceeds, either directly or indirectly.

In March, 1958, Metcalf "learned from Barney [Shinberg] . . . that Ayer desired to borrow funds to produce and promote a new product called Perdue.  Metcalf informed Barney he would discuss the matter with Martinelli, his boss.  He did, and Martinelli told him he would advance moneys to Ayer from time to time as needed.  Barney later spoke to Martinelli, on the telephone, who told him he was to deal with Metcalf, who had full authority to act for Martinelli and Rogers in the matter of such loans.  Thereafter, the checks were withdrawn from time to time from the incoming mail by either Martinelli, and given by him to

Metcalf, or by Metcalf with the approval of Martinelli. Metcalf delivered all the checks to Barney as loans from Rogers to Ayer.''

Puritan is a Delaware corporation, organized February 11, 1959, and ''to which, on or about that date, Ayer transferred all its assets in exchange for 425,000 shares of Puritan.''

Rogers was insured by Liberty under a ''so-called 'Crime Policy' '' originally in the sum of $10,000. On June 26, 1958, Coverage A of said policy was increased to $50,000.

In addition to the facts above summarized the judge found as follows:

''1. I find that the checks transferred to Ayer, contrary to the claims of Rogers and Martinelli, were in fact loans; that, therefore, said transfers were not losses under Liberty's so-called 'Crime Policy,' and that Liberty is not liable to Rogers or anyone else under said policy.

''2. Ayer, in open court, admitted its indebtedness to Rogers in the amount of $54,090.33, and I find it owes such sum to Rogers together with interest thereon from June 1, 1959.

''3. Barney, Maurice, The Bank [Merrimack], and Metcalf do not appear liable to anyone so far as the forty-two checks are concerned, and I so find.

''4. As to claims against Puritan, although no notice was given generally to creditors, Rogers, through Metcalf, had notice of the transfer of assets on February 11, 1959. It did not object to same and brought no action within six months as an aggrieved creditor. It has not shown Puritan was insolvent, and all parties agree Puritan did not assume Ayer's debts. I find Puritan not liable to any of the parties, more especially to Ayer.

''5. I find Martinelli as an individual is not liable to or entitled to relief from any of the parties.''

The evidence is reported and all of the exhibits are properly before us.

The rule is well established that we are to decide the case according to our own evaluation of the testimony, giving

due weight to the findings of the trial judge, which are not to be reversed unless we think them plainly wrong. *Spiegel* v. *Beacon Participations, Inc.* 297 Mass. 398, 407–408. *Blair's Foodland Inc.* v. *Shuman's Foodland, Inc.* 311 Mass. 172, 174. *Murley* v. *Murley,* 334 Mass. 627, 632. *Murach* v. *Massachusetts Bonding & Ins. Co.* 339 Mass. 184, 188.

The evidence is voluminous and we see no need for summarizing it. The testimony of Metcalf and the Shinberg brothers on the vital facts is completely contrary to Martinelli's testimony. There are a number of inconsistencies and contradictions in Metcalf's testimony. This is also true, though to a lesser degree, in the testimony of the Shinbergs. While some of the exhibits tend to support Martinelli's testimony, they are not conclusive.

If we were to decide this case on the basis of the printed record and without giving proper weight to the judge's findings, we might reach a different conclusion. This case resolves itself into a question of credibility. The trial lasted nine days. Counsel were given considerable latitude in the direct and cross-examination of the witnesses. In the circumstances there is inadequate basis for substituting our judgment for that of the trial judge who saw and heard each of the witnesses. We cannot say that he was plainly wrong.

*Decree affirmed.*