FRANK C. HURLEY, administrator, *vs.* MARGARET M. NOONE & another
(and a companion case).

Suffolk.    January 10, 1964. — March 4, 1964.

Present: WILKINS, C.J., CUTTER, KIRK, SPIEGEL, & REARDON, JJ.

*Personal Property,* Ownership, Property in safe deposit box. *Evidence,* Prima facie evidence. *Probate Court,* Costs, Counsel fees.

Currency found in a hired safe deposit box at a bank after the death of the hirer prima facie belonged to her, but findings by the judge in proceedings in a Probate Court determining that some of the currency belonged to the hirer's estate, some to her sister, and some to her nephew were not plainly wrong on reported evidence, and decrees in accordance with the findings were affirmed.    [183–184, 187–188]

In proceedings in a Probate Court by and against an administrator in which it was determined by the judge on the evidence that currency found after the decedent's death in a safe deposit box hired by her at a bank belonged partly to her estate, partly to her sister, and partly to her nephew, there was no error in provisions of the final decrees requiring the sister and the nephew to bear the greater portion of sums awarded to the administrator's attorneys toward costs and expenses.    [190]

PETITIONS filed in the Probate Court for the county of Suffolk on May 2, 1960, and June 10, 1960.

The cases were heard by *Wilson, J.*

*Henry Wise* for Frank C. Hurley, administrator.

*Bernard Wall* for Margaret M. Noone & another.

CUTTER, J.   An equity petition by Hurley, administrator of the estate of his estranged wife, Beatrice, seeks to establish as against Beatrice's sister, Margaret M. Noone, the estate's interest in the property in three safe deposit boxes (nos. 1494, 1589, and 2107) and control of the contents.   Relief against the bank owning the safe deposit boxes was also sought.   Beatrice's heirs were Noone and John F. Barry, a nephew.   Beatrice died March 24, 1960.

On May 9, 1960, a probate judge permitted inspection of at least boxes nos. 1494 and 2107.   The contents were then listed and described by Mr. Wilson, the appraiser appointed by the Probate Court.   Box no. 1589 had been opened by Noone on April 7, 1960.   Various items were then removed by her from that box.

Barry learned of the contents of box no. 2107.   Thereupon, he filed a petition in equity alleging that all the contents of box no. 2107 were his property or that of Noone, in part placed there for his benefit and marked as his.

A decree was entered on the administrator's petition deciding that (1) from the cash contents of box no. 2107, (a) $1,370 belonged to Beatrice's estate, (b) $7,537 belonged to Barry, and (c) $17,994, plus $300 face amount of United States war bonds, belonged to Noone; (2) the contents of box no. 1494 belonged to Beatrice's estate and were to be paid to the estate with interest (as stated below) from May 18, 1960; (3) the contents of box no. 1589 belonged to Noone; (4) the sum of $2,365.02 was to be paid, toward fees and expenses, to the administrator's attorneys, to be prorated between the sums of $1,370 and $17,994 (payable as above set forth) from box no. 2107; and (5) the interest on the contents of box no. 1494 was to be paid to the estate from the $17,994 allocated to Noone.

On Barry's petition, a decree was entered (1) that he was entitled to $900 face amount of war bonds (found in box no. 2107) in which he was named as payee and to $300 face amount of such bonds payable to him or Beatrice; (2) that he was entitled to $7,537 of the cash contents of box no. 2107; and (3) that, from this sum of $7,537, there must be

Hurley *v.* Noone.

paid to the administrator's attorneys $522.69 toward costs and expenses.

Noone and the administrator each appealed from the decree on the administrator's petition. The administrator and Barry each appealed from the decree on Barry's petition. The probate judge filed a report of material facts "limited to . . . two narrow issues designated," viz. (a) the authority under G. L. c. 215, § 45, to direct payment out of the disputed funds in each proceeding, and (b) "the reasonableness of the amount specified in each decree." See fn. 8, *infra.*

As to the contents of box no. 2107,[1] the judge made the following principal findings. Box no. 2107 was first rented on March 9, 1953, in Beatrice's name. Noone claims that on that day, in Beatrice's presence, she transferred bundles of cash into box no. 2107 from box no. 1589, together with most of a total of $11,322.85 (see fn. 4, *infra*) withdrawn by her in cash from four savings banks.[2] Noone in testimony had estimated that there was $38,000 in cash in the box. The cash contents proved to be $26,801.[3]

The judge stated that "[n]umerous financial transactions on the part of . . . [Noone] were highly unusual," as was "testimony by the 30-year [old] taxicab driver . . . Barry that not only the U. S. Bonds, but substantial sums of cash . . . allegedly held for him by his aunt as '[t]rustee,' rep-

---

[1] The contents of box no. 1494 are conceded to belong to Beatrice's estate. No argument is made by Noone's brief that it was improper to charge her with interest upon the contents of this box. She had withheld the key to box no. 1494, which had been taken by her from Beatrice's rooms on the day of Beatrice's death. Also no appeal is claimed by the administrator with respect to so much of the decree upon the administrator's petition as determines that Noone owned the contents of box no. 1589, which stood in the names of Beatrice and Noone. Beatrice did not visit this box from 1955 to 1960, while Noone went to it eleven or twelve times during this period. We treat all these matters as no longer in dispute.

[2] The probate judge found that $1,423.28, withdrawn by Noone from a savings account on August 27, 1956, could not have been deposited in box no. 2107 because there was no access to the box by Noone or Beatrice after January 1, 1955.

[3] Mr. Wilson's report indicates that box no. 2107 may have contained an aggregate amount of $26,901 in currency rather than $26,801 as the judge's findings indicate at one point.

Hurley *v.* Noone.

resented . . . presents to and savings by him . . . turned over . . . to . . . Noone to keep for him, without his ever knowing, — down to the . . . death of Beatrice . . . either the amount . . . place or method of deposit.'' The judge summarized his conclusions on the merits of the petition by stating (1) that ''[d]espite [Noone's] financial transactions and conduct . . . which amply justified [the administrator's] institution of equity proceedings . . . and which I find replete with suspicious circumstances . . . [the administrator] failed to sustain the necessary burden of proof'' and (2) that ''[d]espite evidence of most unusual transactions, as well as evasive and contradictory testimony,'' Barry ''sustained the burden of proof entitling him to possession of certain small U. S. bonds bearing his name, and also substantial sums of cash in a package bearing his name.'' The conclusions are discussed more fully below.

1. The contents of box no. 2107 included at least $26,801 in cash (see fn. 3). The appraiser's report shows that among the bundles, packages, or envelopes of currency in box no. 2107, were four separate bundles of, or envelopes containing, currency in amounts almost precisely equal to withdrawals in cash from savings bank accounts in Noone's name, made on March 4 and 9, 1953.[4] Bank records show that the box was rented and signed for by Beatrice on March 9, 1953. She then gave a written receipt for two keys. Noone testified, however, that she, and not Beatrice, retained the keys.

---

[4] The correlation of withdrawals and packages of currency is shown by the following table.

| Date of Withdrawal 1953 | Bank | Amount Withdrawn | Item No. | Envelope or Package of Bills in Box 2107 |
|---|---|---|---|---|
| March 4 | First National | $1,731.26 | 1 | $1,731 |
| March 4 | Boston Penny Savings | 2,537.74 | 2 | 2,537 |
| March 9 | Boston Five Cents Savings | 2,616.27 | 3 | 2,616 |
| March 9 | Union Savings | 4,437.58 | 4 | 4,437 |

With the bundles of currency in items nos. 1, 2, and 3 were found cancelled savings bank books or passbook envelopes of the following banks, respectively, viz. The First National Bank of Boston, Boston Penny Savings Bank, and The Boston Five Cents Savings Bank. It seems a reasonable inference that the coins withdrawn from the banks were not placed in box no. 2107.

Noone gave testimony that she put about $38,000 in box no. 2107 in March of 1953. Some of this money she said came from box no. 1589 (to which both Noone and Beatrice had access, fn. 1) in which she theretofore had held funds. She claimed to have placed box no. 2107 in Beatrice's name alone because of fears that various persons then making claims against her would attach assets standing in her own name (see e.g. *Davis* v. *Noone*, 341 Mass. 488). Noone also claimed at later stages of her testimony that this was done after consultation with the vault officer at the bank, although his and her earlier testimony did not suggest this.

Records of access to boxes in this bank prior to January, 1954, had been destroyed and were not available at the time of trial. There was no record of any access to box no. 2107 from January 1, 1954, up to the date of trial, except the visit on May 17, 1960, when the administrator (accompanied by counsel) gained admission so that Mr. Wilson could make his inventory. The rent for box no. 2107 ($6.60 per year) was billed to Beatrice and there was evidence that it was paid in cash. Noone testified that she put her sister in funds to pay the box rent.

The transcript of testimony is voluminous and confusing. Noone's testimony contained contradictions and in places was somewhat inconsistent with the claims originally made in her behalf. Nevertheless, in the evidence, including her own testimony, if believed, there was justification for the findings made by the trial judge.

The correlation between the amounts withdrawn from savings banks in early March, 1953, and certain of the bundles found in box no. 2107 (fn. 3, *supra*), first rented on March 9, 1953, is persuasive indication that at least these funds belonged to Noone. There was evidence from which the judge could have found that Noone's past real estate activities had enabled her to save money at least equal to the other amounts awarded to her from the currency in box no. 2107.

The registrations of the various savings bonds (in the names of Barry or of Barry or Beatrice) showed their own-

ership. The judge also could reasonably conclude that Barry owned at least $7,537 of currency in the box (a) on the basis of Barry's own testimony, and (b) because of the manner in which certain currency was placed in the box.[5]

If one deducts from the $26,801 of currency found in the box (a) $11,321 (equal to Noone's 1953 savings bank withdrawals except for fractions of a dollar withdrawn in coins) and (b) $7,537 awarded to Barry, there is a balance of $7,943 of unallocated cash contents. For reasons not wholly clear from the statement of material facts, the judge concluded that one bundle of bills (in a total amount of $1,370) belonged to Beatrice's estate and that the balance ($6,573) of the currency belonged to Noone, thus giving her total cash of $17,894.[6]

We cannot say that the $6,573 awarded to Noone was not justified by Noone's testimony that in March, 1953, she had placed in box no. 2107 substantial cash formerly in box no. 1589, in addition to her then recent savings bank withdrawals.

The award of $1,370 to the estate was justified by the undisputed evidence that box no. 2107 stood in Beatrice's name, and that she (or, in her behalf, the bank[7] owning the safe deposit boxes) had possession of this currency.

Possession of property, with the exercise of the rights of ownership, is evidence of title. See *United Shoe Mach. Co. v. Bresnahan Shoe Mach. Co.* 197 Mass. 206, 215–216 ("Ordinarily it makes a *prima facie* case . . . of title by the

---

[5] In an inner envelope marked with Barry's name (and also with a reference to three $100 bonds owned by Noone), placed within a larger package, were Barry's war bonds and $8,537 of currency. The judge may have concluded that Barry did not own the ten $100 bills also found in the same inner envelope because these ten bills were found next to some war bonds in Noone's name.

[6] This would be true if the total cash contents of the box were $26,801, see fn. 3. The figure would be $17,994, if the total cash contents were $26,901.

[7] As to the relationship of a bank or other safe deposit company to the lessee of a safe deposit box, see *National Safe Deposit Co. v. Stead*, 232 U. S. 58, 68; 10 Am. Jur. 2d, Banks, §§ 469–473; annotations, 40 A. L. R. 874, 881, 42 A. L. R. 1304, 1305, 133 A. L. R. 279, 280–283. See also *West v. State St. Exch.* 250 Mass. 537, 540–542; *McQuade v. Springfield Safe Deposit & Trust Co.* 333 Mass. 229, 233–236. Cf. *Graham v. Barnes*, 259 Mass. 534, 538; annotation, 14 A. L. R. 2d 948.

possessor.''); *Silver* v. *Roberts Garage, Inc.* 240 Mass. 571, 573; *Simons* v. *Northeastern Fin. Corp.* 271 Mass. 285, 291. See also *Magee* v. *Scott,* 9 Cush. 148, 150–151. Cf. *Kobrosky* v. *Crystal,* 332 Mass. 452, 460–461. Possession frequently is especially strong evidence of title in the case of currency. See *Wyer* v. *Dorchester & Milton Bank,* 11 Cush. 51, 53–55, which, as to a stolen bank note, stated that the burden was not on the holder ''to show how he acquired the bill . . . but . . . on the defendants [the issuing bank] to show'' that the holder ''received it . . . [in] such circumstances as to prevent maintenance of'' the action. See also *Massachusetts Natl. Bank* v. *Snow,* 187 Mass. 159, 163. Cf. *Scollans* v. *E. H. Rollins & Sons,* 179 Mass. 346, 352–353; *Elbar Realty, Inc.* v. *City Bank & Trust Co.* 342 Mass. 262, 268 (government bearer bonds). Proof of Beatrice's possession of the currency in the box (or of the bank's possession as her bailee for safekeeping) thus established a prima facie case of her ownership. It was, of course, open to Noone and Barry to offer evidence (see *Bone* v. *Holmes,* 195 Mass. 495, 505–506) to control the evidence of possession produced by the administrator, and, when that evidence was offered, ''the whole evidence . . . [was to be] considered together to determine the true title.'' See the *United Shoe Mach. Co.* case, *supra,* 197 Mass. 206, 216. Noone and Barry thus had the burden of going forward with, and convincing the judge of the truth of, testimony to control the administrator's prima facie case.

Because the evidence consists largely of oral testimony, due weight is to be given to the findings of the trial judge, who had an opportunity to gauge the credibility of the witnesses. See *Linse* v. *O'Meara,* 338 Mass. 338, 345; *Murach* v. *Massachusetts Bonding & Ins. Co.* 339 Mass. 184, 188; *Liberty Mut. Ins. Co.* v. *A. C. Martinelli Rogers Plastic Corp.* 344 Mass. 498, 501–502. His findings are not plainly wrong.

The administrator calls attention to the judge's ambiguous statement that he ''found that . . . [the administrator] failed to sustain the necessary burden of proof, and there-

fore entered" a decree for Noone "except as to . . . $1370 as to which [Noone's] testimony," that this money was placed in the box in 1953, "could not be reconciled with her own testimony" about withdrawing the cash from a savings account in August, 1956. The administrator contends that this statement shows the judge to have had an erroneous view concerning what burden rested upon Noone and the estate, respectively, to prove facts supporting their contentions.

The statement occurs in a report[8] of the facts material to the issues concerning costs and expenses and in a paragraph merely summarizing the action taken upon the merits of the administrator's petition. In the immediately following paragraph, the judge similarly summarized his action on Barry's petition and said that he "was constrained to find that . . . Barry sustained the burden of proof" concerning the bonds and cash awarded to him.

We do not regard either of these statements as intended to be a ruling that the administrator had not made out a prima facie case. The statement with respect to Barry's petition shows that the judge was convinced by the testimony supporting Barry's contentions. Noone's position rested on essentially the same evidence. The judge, by failing to accept her testimony concerning the $1,370, shows in effect that he has considered and been persuaded by the evidence supporting the award of other amounts to her. We view the two statements concerning "burden of proof," together and in context, as indicating merely that the judge had believed some parts of the evidence supporting Noone's and Barry's position[9] and had concluded that it was more

[8] Although the judge purported to limit the report to issues concerning the allocation and amount of costs and expenses, so far as he has dealt there with other issues we consider what is set forth in the report.

[9] Noone and Barry are not barred from asserting their claims to cash in box no. 2107, by the circumstance that Noone's motive may have been to make it difficult for creditors to reach her assets. See *O'Gasapian* v. *Danielson*, 284 Mass. 27, 34–35. See also *Rotondi* v. *Rotondi*, 325 Mass. 503, 504–505; *Bohaker* v. *Koudelka*, 333 Mass. 139, 143; *Buccella* v. *Schuster*, 340 Mass. 323, 326–327; *Wilson* v. *Jennings*, 344 Mass. 608, 619. Barry was not shown to have participated in any effort to defraud his creditors. Noone's action has not been shown to have been fraudulent as to any party to these proceedings.

significant than the possession evidence upon which the administrator necessarily relied.

2. In any event the decree as to costs and counsel fees was justified. The administrator found himself in possession of a substantial fund. Any confusion concerning ownership of that fund was caused (if her testimony was true) by Noone's own equivocal conduct in placing her money in a box rented by Beatrice. It was the administrator's plain duty to obtain an adjudication of title to cash assets, which prima facie belonged to Beatrice's estate and which, even if the cash belonged to Noone and Barry, the administrator held in a fiduciary capacity. The judge justifiably concluded that, regardless of the outcome, the expense of a court determination should rest, principally at least, on Noone and Barry. See G. L. c. 215, § 45, as amended through St. 1931, c. 120, § 1 (and see § 39A, as amended through St. 1951, c. 80, and § 39B, inserted by St. 1951, c. 312); *Perry* v. *Perry,* 339 Mass. 470, 483–486; *Coles* v. *Goldie,* 341 Mass. 183, 187; Newhall, Settlement of Estates (4th ed.), §§ 32, 33. See also *Commissioner of Ins.* v. *Massachusetts Acc. Co.* 318 Mass. 238, 241–242, fn. 1; *New England Trust Co.* v. *Triggs,* 339 Mass. 453, 457; *Golden* v. *Taft,* 344 Mass. 152, 156, and authorities cited. Cf. *Day Trust Co.* v. *Malden Sav. Bank,* 328 Mass. 576, 580; *Mulcahy* v. *Boynton,* 341 Mass. 171, 178; *Lane* v. *Cronin,* 345 Mass. 52, 53–54.

*Decrees affirmed.*