CHARLES J. MILLER *vs.* BENJAMIN STERN, executor.

Middlesex.    May 2, 1950. — July 26, 1950.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & WILLIAMS, JJ.

*Executor and Administrator,* Attorney.    *Statute,* Construction.    *Will,*
    Contest.    *Attorney at Law.*

Services, performed by an attorney retained by certain persons interested
    in a decedent's estate, in instituting a contest of the decedent's will;
    in studying legal questions involved and gathering evidence; in nego-
    tiating a compromise whereby the will was allowed, a clause respecting
    forfeiture of the benefits thereunder of any contestant became inoper-
    ative, certain bequests given in trust were to go to the beneficiaries
    outright, and one bequest was increased in amount; and in drafting
    and redrafting the compromise agreement and supplying the execu-
    tor's counsel with material for a brief respecting the jurisdiction of the
    Probate Court in the matter of compromise, could not properly be
    found to have been "rendered to the estate or to its representative"
    within G. L. (Ter. Ed.) c. 215, § 39A, inserted by St. 1947, c. 536, or
    to have been of benefit to the estate.
Commonly a judicial interpretation of a statute by the courts of the
    jurisdiction where it was enacted is intended to be adopted when
    subsequently substantially the same statute is enacted in another
    jurisdiction.
G. L. (Ter. Ed.) c. 215, § 39A, inserted by St. 1947, c. 536, did not au-
    thorize payment to an attorney from a decedent's estate generally
    of compensation for services which he, after being retained by certain
    persons interested in the estate, rendered in instituting a contest of
    the decedent's will and in negotiating and effecting a compromise
    whereby the will was allowed, and which, although of substantial
    benefit to his clients, were not "rendered to the estate or to its repre-
    sentative" within the statute and were not of benefit to the estate;
    the attorney must look to his clients for payment for such services.
On appeal from a decree of a Probate Court ordering payment to an
    attorney from a decedent's estate generally of compensation for serv-
    ices on a petition under G. L. (Ter. Ed.) c. 215, § 39A, inserted by St.
    1947, c. 536, this court, upon reversing the decree on the ground that
    the services, although of substantial benefit to persons interested in
    the estate who had retained the attorney and for whom he had acted
    when rendering the services in contesting the decedent's will and in
    effecting a compromise, were not "rendered to the estate or to its
    representative" within the statute and were not of benefit to the

estate, ordered that the case stand for further hearing if within a specified time after rescript the petitioner sought to have the Probate Court, under the statute, fix his compensation and order it paid from funds of his clients in the hands of the executor; otherwise that the petition be dismissed.

PETITION, filed in the Probate Court for the county of Middlesex on July 11, 1949.

The case was heard by *Monahan*, J.

*P. D. Turner*, for the respondent.

*W. Powers*, (*J. B. Dolan* with him,) for the petitioner.

SPALDING, J. The petitioner, an attorney, performed certain services in connection with a controversy arising out of the probate of the will and two codicils of Doris S. Bachrach, who died on August 27, 1948. The will and codicils, as modified by a compromise agreement, were allowed on June 7, 1949. In this petition, which is brought in the Probate Court under G. L. (Ter. Ed.) c. 215, § 39A, inserted by St. 1947, c. 536, the petitioner alleges that he performed services "for the benefit of or in connection with the estate" of the testatrix, and asks the court to fix and determine his compensation for such services and direct that it be paid "from the estate generally or as the court may determine." A decree was entered fixing the petitioner's compensation at $8,000 and ordering its payment from the estate generally. The executor appealed. The evidence is reported and the judge made a voluntary report of material facts.

The next of kin of the testatrix were her four brothers, Benjamin, Julius, Alfred, and Irving Stern. Under her will, as modified by two codicils, she made the following bequests to her brothers: $40,000 to Benjamin, $25,000 to Julius, $20,000 to Alfred, and $35,000 to Irving. All of the brothers were to share equally in the residue. The bequests to Irving and Alfred, including their shares of the residue, were to be held in trust by Benjamin and his wife "for the personal support and maintenance" of Irving and Alfred respectively. Out of each of the funds so bequeathed the trustees were authorized to pay over to the beneficiary

out of principal and income "such sums as they in their uncontrolled discretion shall determine to be for his interest to receive." On Irving's death the fund remaining in his trust was to be distributed to the nephews and nieces of the testatrix. Irving has no children. Alfred has a daughter, Joanne, who was given a bequest of $5,000. On Alfred's death the fund remaining in his trust was to go to Joanne, if living, otherwise to her issue, but if she left no issue then the fund was to go, share and share alike, to the other nieces and nephews of the testatrix. Benjamin has three children and Julius has two.

It was provided in article 15 of the will that all bequests and devises were given "upon the express consideration that the respective legatees and devisees shall not contest nor oppose the allowance . . . of this will," and that in the event of such contest or opposition the gift of the contestant was revoked and his share was to become part of the residue and was to be divided among the other non-contesting legatees. This article further provided that the "entrance of an appearance in opposition to the allowance of such will in behalf of anyone shall be deemed the contesting of the will by such person."

Irving, Alfred, Joanne, and Betty Shupack[1] desired to oppose the allowance of the will on the grounds of undue influence and lack of testamentary capacity, and retained the petitioner for that purpose. After studying the will and considering the possibilities of a successful contest, the petitioner entered an appearance on behalf of Irving only. Thereafter he carried on negotiations over a considerable period with counsel representing the estate and various beneficiaries, and a compromise was finally effected. By its terms the forfeiture clause (article 15) was to be inoperative and Irving and Alfred were to receive their bequests outright. Joanne's bequest of $5,000 was increased to $10,000.

---

[1] Betty Shupack is a cousin of the testatrix and is now the wife of Irving. She received a legacy of $1,000 under the will which was not affected by the compromise.

The executor challenges the decree on the grounds (1) that the payment to the petitioner should not have been ordered out of the estate generally, and (2) that the amount awarded is excessive. A considerable portion of the judge's report consisted of findings which bore on the second issue. But in the view that we take of the case we do not reach that question. We are of opinion that the petitioner's case must fail on the first issue. The judge doubtless rested his decision that the petitioner be paid out of the estate generally on his finding that the petitioner "rendered valuable services to the estate, [and] to the executor."[1] If supported by the evidence that finding, of course, must stand. But we are of opinion that on this record such a finding is not justified.

The petitioner was retained by four legatees under the will and entered an appearance in opposition to its allowance on behalf of one of them. His work thereafter consisted principally in studying the legal questions involved and especially those that might arise out of the forfeiture clause, in gathering evidence to be used in the event of a trial, and in drafting and redrafting the compromise agreement. That the petitioner did a considerable amount of work, that it was performed competently, and that it was of substantial benefit to his clients cannot be denied. The judge so found and this finding is amply supported by the evidence. But we fail to see how these services were of any benefit to the estate or were "rendered to the estate or to its representative." On the contrary the estate has been subjected to an expense which, but for the opposition to the will, it would not have incurred. By inserting article 15 in her will, which under our decisions is a valid provision,[2] the testatrix did all within her power to prevent such opposition. It would be strange indeed to say that a proceeding which has resulted in thwarting the desires of the testatrix, has brought no revenue into the estate, and has

[1] The judge also found that the petitioner rendered valuable services "to the legatees Alfred, Irving and Joanne, and, more remotely, to Betty Shupack."

[2] *Rudd* v. *Searles*, 262 Mass. 490. *Maguire* v. *Bliss*, 304 Mass. 12. *Old Colony Trust Co.* v. *Wolfman*, 311 Mass. 614.

caused it additional expense has at the same time benefited the estate. Nor can it be said that any of the legatees or devisees other than the petitioner's clients have been benefited by his efforts. On the contrary a number of them (that is, the nieces and nephews of the testatrix) have been deprived of contingent interests by the terms of the compromise. The argument of the petitioner that the estate was benefited by "the putting through of the compromise" does not impress us. Doubtless in a sense whenever one is saved the bother and expense of a law suit he may be said to have received a benefit. But the institution of proceedings against another and the subsequent termination of them through settlement or compromise are not ordinarily considered the sort of benefit that a plaintiff or his counsel can require his opponent to pay for.

As for the finding that the petitioner rendered services to the executor, it is true that his drafting and redrafting of the compromise agreement were done partly at the suggestion of the attorney for the executor. The judge could also have found that the petitioner supplied counsel for the executor with material for a brief dealing with the jurisdiction of the Probate Court to entertain the petition to compromise. But in performing this work he was in reality rendering services for which he had been retained by his clients. They were the ones who instituted the opposition to the will and who stood to gain by the terms of the compromise.

We are faced, then, with the question whether a person who has rendered services for some of the persons interested in an estate but who has performed no services for the estate or its representative and has conferred no benefit on the estate can, under the statute presently to be discussed, be compensated from the estate generally. The present petition is brought under a recent statute (G. L. [Ter. Ed.] c. 215, § 39A, inserted by St. 1947, c. 536), the material portions of which are as follows: "At any time during the administration of an estate, and irrespective of the pendency of a particular proceeding, the probate court shall have

power to hear an application for, and fix and determine, the compensation and expenses of an attorney for services rendered to the estate or to its representative or to a devisee, legatee, distributee or any other person interested therein. . . . In the event that the court shall determine that any sum or sums is or are due to the petitioner or to any other party interested in the application, the compensation shall be awarded on an equitable basis in accordance with the size, importance, complexity and difficulty of the matters involved and the time spent thereon. The court may direct payment thereof from the estate generally or from funds in the hands of the representative of the estate and belonging to any legatee, devisee, distributee or other person interested therein." With respect to the questions here involved this statute has not been construed by this court.[1]

The quoted portions of § 39A are almost identical with the provisions of § 231-a of the Surrogate's Court Act of New York, which has been in effect since 1923, and it is reasonable to infer that our statute was modeled on it. "It is an established rule that the adjudged interpretation of the words of a statute by the courts of the jurisdiction where it was enacted is intended to be adopted when afterwards the same statute is passed by the Legislature of another State or country. Courts of the latter State or country commonly feel constrained to give to the statute the same construction as that earlier given it by the courts of the State or country first enacting it, in the absence of compelling reasons to the contrary." *Commissioner of Banks* v. *Prudential Trust Co.* 242 Mass. 78, 84. *Thibault* v. *Lalumiere*, 318 Mass. 72, 75. Turning to the decisions under the New York statute it is clear that in a situation similar to that here the petitioner would not be entitled to be compensated out of the estate. In *Matter of Chaves*, 143 Misc. (N. Y.) 872, Surrogate Foley, one of the authors of the New York statute,[2] said, "The provisions of section 231-a of the

---

[1] The only decision construing this statute is *Condon* v. *Haitsma*, 325 Mass. 371, 373, a case dealing with the meaning of the words "At any time."

[2] See *Matter of Winburn*, 160 Misc. (N. Y.) 49, 52.

Surrogate's Court Act with respect to the authority of the surrogate to direct payment 'from the estate generally' are intended primarily, and almost exclusively, to apply to payments for services rendered to the executor, administrator or trustee. It was not intended to permit the diminishment of the pecuniary shares of other persons interested, by large allowances out of the general estate to attorneys for legatees, remaindermen or other beneficiaries. In most cases these charges would fall unjustly upon the residuary legatees. In trust funds they would reduce the income of the life tenant or the share of the remainderman. Where disputes arise in accounting or other proceedings, the attorney for the party (who is not a representative of the estate) should be paid directly by the client he represents." The foregoing statement was quoted with approval and applied by the Appellate Division in *Matter of Foreman*, 238 App. Div. (N. Y.) 388, 391–392. In that case, which closely resembles the case at bar, it was held error to order counsel fees to be paid out of the estate to counsel for contestants in a will contest which resulted in a compromise. The court said at page 392, "The courts have definitely established that by the provision contained in section 231-a for the payment of allowances out of the general estate, the allowances to be made were for services rendered to a representative of the estate, the only exception being that services rendered by an attorney for a particular party may be compensated out of the general estate when the general estate has been benefited by the services rendered. We are not impressed by the fanciful argument of counsel for the respondents that the contestant's withdrawal of her objections, and her consent to the entry of a decree admitting the will to probate, saves a long and expensive contest, thereby benefiting the estate of the decedent. We do not think the consent of the contestant to the admission of the will to probate is such an advantage to the estate as would justify the payment of her counsel from the general estate." Other New York decisions to the same effect are *Matter of Parsons*, 121 Misc. (N. Y.) 747, *Matter of Vorn-*

*dran,* 132 Misc. (N. Y.) 611, and *Matter of Rosenberg,* 147 Misc. (N. Y.) 517. We are aware that the New York decisions rest to some extent on other statutory provisions which differ from ours. Nevertheless they shed some light on the construction of § 39A.

We are of opinion that the wording of § 39A itself, apart from its decisional background, affords support for the conclusion here reached. It is to be noted that the first sentence of that section confers power on the Probate Court, on application of an attorney, to fix his compensation for services rendered to "the estate or to its representative or to a devisee, legatee, distributee or any other person interested therein." Having determined that such compensation is due and the amount thereof in accordance with the statute, the court may direct that it be paid "from the estate generally or from funds in the hands of the representative of the estate and belonging to any legatee, devisee, distributee or other person interested therein." The literal wording of the provision just quoted might permit the court to do what was done here. But an intent that would empower the Probate Courts to require an estate to pay for services not rendered to it is not readily to be imputed to the Legislature. It does no violence to the words of the statute to say that payment of counsel fees from the estate generally may be directed only when the services for which the compensation is to be made were rendered to the estate or its representative and that, where the services were rendered "to a devisee, legatee, distributee or any other person interested therein," payment should be directed "from funds in the hands of the representative of the estate and belonging to any legatee, devisee, distributee or other person interested therein."

Our belief in the correctness of this interpretation is fortified by a consideration of the consequences attending a contrary view. It is difficult to conceive of anything better calculated to promote litigation over wills and estates by dissatisfied heirs than the knowledge that, win or lose, the expenses of contesting will be borne by the estate. Further-

more, since the amount of compensation under § 39A is to be determined "in accordance with the size, importance, complexity and difficulty of the matters involved and the time spent thereon," unscrupulous counsel will be encouraged to instigate litigation on the flimsiest of pretexts and to protract it as long as possible. He will be assured that the estate which in any case must bear the expense of defence may also be forced to pay for the attack. Under such a construction of § 39A the contestant and his counsel have everything to gain and little to lose. It would take clear and unequivocal language to convince us that such results were within the purview of the statute. Cases may occur where through the efforts of counsel for a beneficiary the general estate has been benefited, as where counsel has been successful in creating, preserving, or increasing the estate, and it may be that in such cases the court could properly under § 39A order that counsel be paid out of the general estate. See *Commissioner of Insurance* v. *Massachusetts Accident Co.* 318 Mass. 238, 242–243. The New York statute has been construed to permit such payments. See *Matter of Foreman*, 238 App. Div. (N. Y.) 388, 392; *Matter of Parsons*, 121 Misc. (N. Y.) 747, 750; *Matter of Vorndran*, 132 Misc. (N. Y.) 611, 612; *Matter of Rosenberg*, 147 Misc. (N. Y.) 517, 520; *Matter of Winburn*, 160 Misc. (N. Y.) 49, 52. But the present case is not of that sort.

It follows that the decree below was erroneous in ordering compensation to be paid to the petitioner out of the estate generally and is reversed. In view of this conclusion we are not called upon to determine the correctness of the amount fixed by the judge. As indicated above the petitioner must look to his clients for payment. He may, if so advised, ask the Probate Court under § 39A to fix the amount of his compensation and order it paid from the funds of his clients in the hands of the executor of the estate. Obviously if this course is followed the petitioner's clients ought to have an opportunity to be heard. Moreover, since § 39A permits the size of the matter involved to be considered in fixing the attorney's fee, the basis of com-

pensation would be different, for the amount involved would be less in such a case than if the matter were treated as relating to the estate generally. If within thirty days after rescript the petitioner seeks under the present petition or an amendment thereof to have the court fix the fees to be paid out of his clients' funds the case is to stand for further hearing. Otherwise the petition is to be dismissed. The petitioner's motion for costs and expenses with respect to this appeal is denied.

                                             *So ordered.*