THE FIRST NATIONAL BANK OF BOSTON, executor,[1]
*vs.* MARY E. SULLIVAN, executrix, & others
(and four companion cases).

Middlesex.     April 15, 1976. — July 1, 1976.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Probate Court,* Counsel fees, Costs.

A Probate Court judge had the power under the provisions of G. L. c. 215, § 39B, to award counsel fees and expenses out of an estate to parties who had successfully claimed an equitable interest in certain securities standing in the testator's name at the time of his death. [417-423]

PETITIONS filed in the Probate Court for the county of Middlesex on January 16, 1960, on February 4, 1969, and on February 5, 1969.

Following the decision of this court reported in 2 Mass. App. Ct. 452 (1974), proceedings for allowance of counsel fees and expenses were reported by *Sullivan, J.*

*Paul J. Driscoll* for Mary E. Sullivan, executrix, & others.

*Robert F. Sylvia* for Elias M. Loew.

---

[1] The bank is the successor to Thomas J. Colbert as the executor of the will of Paul F. Bowser.

GRANT, J.   At the time of his death on July 17, 1960, Paul F. Bowser was the record owner of various securities representing substantial equity and debt positions in Bay State Harness Horse Racing and Breeding Association, Inc. (Bay State), which owns and operates a racetrack in Foxborough, and a substantial equity position in Norfolk County Concessionaires, Inc. (Norfolk), a corporation supplying food and drink at the track. Thomas J. Colbert was appointed as the executor of Bowser's will by a decree of the Probate Court for Middlesex County entered on August 18, 1960. During the period from July 17 through August 8, 1961, fourteen separate petitions for the retention of assets were filed by or in behalf of various persons who claimed to be the equitable owners of portions of the securities standing in Bowser's name at the time of his death. Those petitions were all promptly allowed, with pertinent orders for retention. On July 23, 1962, one Elias M. Loew, who had held substantial equity and secured debt positions in Bay State and Norfolk since 1947, purchased the interests of all the residuary legatees under Bowser's will. Such purchases were subsequently confirmed by the court on January 14, 1963.

On January 16, 1969, Colbert, as the then executor, filed a petition on the equity side of the court against all those who had filed petitions for the retention of assets, against one claimant who had not filed such a petition, and against Loew, seeking declaratory relief with respect to all the claims which had been asserted against the securities of Bay State and Norfolk standing in Bowser's name. Separate petitions, similarly seeking declaratory relief with respect to their particular claims, were filed by four of the claimants. Loew was named or permitted to intervene as a respondent in those four petitions. All five petitions were heard together. The decrees (one of them as amended) entered by the judge determined, among other things, that each of certain named claimants was the equitable owner of certain securities of Bay State or Norfolk (or both) standing in Bowser's name at the time of his death. Loew appealed from all the decrees. All the decrees were affirmed

(with certain modifications) by this court in *First Natl. Bank* v. *Sullivan,* 2 Mass. App. Ct. 452 (1974) (the prior case).

Subsequent to the issuance of our rescript in the prior case counsel for certain of the successful claimants filed in the Probate Court petitions by which they severally sought to have the court fix and determine their compensation and expenses in connection with the entire litigation (including the appeal) and to "direct payment thereof from the [Bowser] estate generally or as the [c]ourt may determine." In addition, one of the claimants filed a separate motion "under Mass. G. L. c. 215, §§ 39B and 45, that the [c]ourt provide payment to her out of the [e]state ... for counsel fees and other expenses" incurred by her (and by her testator prior to his death) in connection with portions of the same litigation.[2] Counsel for the claimants and counsel for Loew submitted somewhat conflicting forms of judgments to be entered after rescript in the prior case.

The judge held an evidentiary hearing on the question of counsel fees and expenses and conferred with counsel concerning the proposed judgments. He made findings as to the fair and reasonable value of the services rendered by each petitioning counsel and as to the expenses (if any) incurred by each such counsel in connection with the entire litigation, including the appeal in the prior case; he also made a like finding with respect to the services already paid for by the claimant who had filed a separate motion. He then (February of 1975) reported to this court the question whether he has the authority to award the requested fees and expenses out of the Bowser estate. Mass.R.Civ.P. 64, 365 Mass. 831 (1974). It is clear from the report that the judge intends to exercise his discretion

---

[2] There is no duplication of requests for counsel fees and expenses. The successful claimant is seeking reimbursement for fees which she has already paid her counsel for certain of their services, and her counsel are seeking fees and expenses for and in connection with other services for which they have not been compensated or reimbursed by anyone.

in favor of making awards out of the estate if we determine that he has the power to do so. Loew, as the sole residuary legatee (by purchase) of the Bowser estate, takes the position that no such power exists.[3]

## THE POWER TO AWARD COUNSEL FEES AND EXPENSES OUT OF THE ESTATE.

Several considerations lead us to the conclusions (a) that the judge had the power to award the requested counsel fees and expenses out of the Bowser estate under the provisions of G. L. c. 215, § 39B, inserted by St. 1951, c. 312,[4] and as in effect at the time of the report in this matter, and (b) that the judge continues to have that power under the provisions of G. L. c. 215, § 39B, as appearing in St. 1975, c. 400, § 70,[5] and as now in effect.

---

[3] Loew himself was a successful claimant with respect to certain securities standing in Bowser's name, and he appears to have purchased the interests of another successful claimant following our rescript in the prior case. Neither Loew nor his counsel has requested any award of counsel fees or expenses from any source. As in the prior case, the bank has assumed the role of a stakeholder.

[4] "When a decree is entered in a contested proceeding [1] in equity or [2] on an account or [3] to determine the construction of a will or of any trust instrument or [4] to determine any question as to the powers, rights or duties of any fiduciary under any written instrument or [5] to determine any question with respect to services rendered by any such fiduciary or the compensation of such fiduciary for such services, the probate court may, in its discretion as justice and equity may require, provide that such sums as said court may deem reasonable be paid out of the estate in the hands of such fiduciary to any party to the proceeding on account of counsel fees and other expenses incurred by him in connection therewith. The sums awarded shall be specified in the decree which may in such case direct that any sum so awarded to any party be paid in whole or in part to his counsel. The probate court, subject to appeal, shall have like powers when entering a decree after the coming down of a rescript from the supreme judicial court unless the rescript shall specifically direct otherwise. The counsel of any party to whom an award might be made under this section on account of counsel fees or expenses may file and prosecute in his own name a petition under section thirty-nine A for the payment directly to him of any sum or sums which the court would have power to award to the party . . . ." The numbers in brackets have been inserted for ease of reference.

[5] "When a judgment or decree is entered in a contested proceeding [1] seeking equitable relief or [2] on an account or [3] to determine

Our first consideration is the actual language of § 39B in its original form. The first sentence of that section set out in order at least five separate, distinct and readily recognizable categories of contested proceedings commonly encountered by Probate Courts in the course of exercising their jurisdiction over the administration of estates and trusts. See note 4. The present proceedings obviously did not fall within any of the categories which we have numbered as [2], [3] or [5] of that sentence. There is room for doubt whether they fell within category [4].[6] They did fall literally within category [1], namely, contested proceedings "in equity".[7] The record legal title to the securities in question had vested in Colbert in his capacity as the then executor of Bowser's will (*Reardon* v. *Whalen*, 306 Mass.

---

the construction of a will or of any trust instrument or [4] to determine any question as to the powers, rights or duties of any fiduciary under any written instrument or [5] to determine any question with respect to services rendered by any such fiduciary or the compensation of such fiduciary for such services, the probate court may, in its discretion as justice and equity may require, provide that such sums as said court may deem reasonable be paid out of the estate in the hands of such fiduciary to any party to the proceeding on account of counsel fees and other expenses incurred by him in connection therewith. The sums awarded shall be specified in the judgment or decree which may in such case direct that any sum so awarded to any party be paid in whole or in part to his counsel. The probate court, subject to appeal, shall have like powers when entering a judgment or decree after the receipt of a rescript from the supreme judicial or appeals court unless the rescript shall specifically direct otherwise. The counsel of any party to whom an award might be made under this section on account of counsel fees or expenses may file and prosecute in his own name a petition under section thirty-nine A for the payment directly to him of any sum or sums which the court would have power to award the party . . . ." Numbers in brackets again inserted.

[6] Section 39B clearly applied to petitions for instructions brought under what we have numbered as [3] and [4]. *Golden* v. *Taft,* 344 Mass. 152, 156 (1962). *New England Merchs. Natl. Bank* v. *Koufman,* 363 Mass. 454, 457, 462-463 (1973).

[7] The quoted words did not appear in the original bill which eventuated as St. 1951, c. 312 ("An Act relative to counsel fees and certain other expenses in the probate courts"); they were subsequently inserted in the course of a somewhat tortuous passage to ultimate enactment. See 1951 House Doc. No. 459; 1951 House Journal, pp. 545, 562; 1951 Senate Journal, pp. 441, 481, 496, 536, 886-887, 901-902; 1951 House Journal, pp. 1237, 1249, 1268; 1951 Senate Journal, p. 936.

579, 581 [1940]; *Kobrosky* v. *Crystal,* 332 Mass. 452, 461 [1955]), and he was under a duty to obtain adjudications of the claimants' rights (if any) in and to the securities. See *Hurley* v. *Noone,* 347 Mass. 182, 190 (1964). As appears from the prior case and above, Colbert performed that duty by invoking the equity jurisdiction of the court to grant declaratory relief with respect to all claims; four of the (now successful) claimants responded by filing separate petitions in equity with respect to their particular claims.[8] There can be no doubt that the claimant who has now filed a separate motion for reimbursement of her counsel fees would have been a "party" within the meaning of the first and second sentences of the original § 39B; nor can there be any doubt that each of the now petitioning counsel would have been the "counsel of . . . [a] party" within the meaning of the fourth sentence of that section. Looking solely at the language of that section, we conclude that it would have permitted the judge, in the exercise of his sound discretion, to make appropriate awards of counsel fees and expenses to the claimants or their counsel out of the Bowser estate in the final decrees originally entered by him prior to Loew's appeals to this court.

It should be noticed, however, that the second sentence of the original § 39B contemplated that "[t]he sums awarded" out of the estate "be specified in the decree" and that under the third sentence of that section any award of counsel fees and expenses from the same source in connection with any appeal was to be separately determined "after the coming down of a rescript . . . unless the rescript shall specifically direct otherwise."[9] The contemplated procedures were not employed in the prior case, and none of the original decrees contained any provision for an

---

[8] All five petitions were within the equity jurisdiction of the Probate Courts under the provisions of G. L. c. 215, § 6, as in effect prior to St. 1963, c. 820, § 1, with the result that we are not here concerned with the type of problem considered in *United Tool & Industrial Supply Co. Inc.* v. *Torrisi,* 359 Mass. 197 (1971).

[9] Our rescript in the prior case did not otherwise direct. See 2 Mass. App. Ct. at 466.

award of counsel fees from any source.[10] The judge's find-ings in the present proceedings as to the fair and reasonable value of the services rendered and the expenses incurred by the various counsel do not distinguish between (a) the services rendered and expenses incurred in connection with the original trial and (b) those rendered and incurred in connection with the appeal in the prior case. We do not think either of the failures to comply with the contem-plated procedures presented any real obstacle to the exer-cise of the basic powers accorded the judge under the pro-visions of the original § 39B. Our rescript in the prior case required the taking of further evidence, certain modifica-tions in the original decrees, and the entry of new judg-ments after rescript. It has been determined in substan-tially similar situations arising under the provisions of G. L. c. 215, § 45, that Probate Courts may award prevail-ing counsel their fees and expenses after rescript in con-nection with all phases of the litigation. See and compare *Untersee* v. *Untersee,* 299 Mass. 417, 423-424 (1938); *Hayden* v. *Hayden,* 326 Mass. 587, 595 (1950); *New En-gland Trust Co.* v. *Triggs,* 339 Mass. 453, 455-456 (1959).

Looking again solely at the language of the original § 39B (note 4, *supra*), we conclude that the judge had the power to award counsel fees and expenses out of the Bowser estate to the successful claimants or their counsel in connection with the entire litigation at the time of his report in the present proceedings. We see nothing in the changes in that section which were effected by St. 1975, c. 400, § 70 (see note 5, *supra*), which would prevent the judge's exercise of that same power at the present time.[11]

---

[10] This was undoubtedly because the judge had not by that time been asked to make any award of counsel fees.

[11] Despite the formal title of St. 1975, c. 400 ("An Act applying the Massachusetts rules of civil procedure to domestic relations pro-ceedings"), the only changes effected in § 39B by § 70 of that act ap-pear to have been ones designed to reflect (a) the fact that the Mas-sachusetts Rules of Civil Procedure had become applicable on July 1, 1974, to proceedings "seeking equitable relief" in the Probate Courts (Mass.R.Civ.P. 1, 365 Mass. 730 [1974]) and (b) the concurrent ap-pellate jurisdiction of this court with that of the Supreme Judicial

Loew's only substantial argument in opposition to the existence of the power contended for by the petitioning counsel and the successful claimant is that the prior proceedings did not result in any benefit to the Bowser estate but, on the contrary, resulted in the actual depletion of the estate. Great reliance is placed on the case of *Miller* v. *Stern,* 326 Mass. 296 (1950), in which the court reversed an award of counsel fees out of an estate to counsel for a contestant who had succeeded in depleting the assets of an estate for the benefit of his clients and, in so doing, had frustrated the intention of the testatrix as expressed in her will. It was held in that case that no award of counsel fees should be made out of the estate when (as in the present cases) the services in question have not been rendered to the estate unless the services have resulted in a benefit to the estate in the sense of creating, preserving or increasing the same (326 Mass. at 299-304).

We think the reliance on the *Miller* case is misplaced. That case was decided under the original G. L. c. 215, § 39A,[12] a year prior to the enactment of G. L. c. 215, § 39B,

Court (G. L. c. 211A, § 10). We note that none of the briefs in the present proceedings even refers to the 1975 amendment.

[12] General Laws c. 215, § 39A, inserted by St. 1947, c. 536, and as amended by St. 1951, c. 80, reads as follows: "At any time during the administration of an estate, and irrespective of the pendency of a particular proceeding, the probate court shall have power to hear an application for, and fix and determine, the compensation and expenses of an attorney for services rendered to the estate or to its representative or to a devisee, legatee, distributee or any other person interested therein. [¶] Such application shall be instituted by a petition, upon a form provided by the court. Notice of the application shall be given in such manner as the court shall direct. In the event that the court shall determine that any sum or sums is or are due to the petitioner or to any other party interested in the application, the compensation shall be awarded on an equitable basis in accordance with the size, importance, complexity and difficulty of the matters involved and the time spent thereon. The court may direct payment thereof from the estate generally or from funds in the hands of the representative of the estate and belonging to any legatee, devisee, distributee or other person interested therein. [¶] In the event that the court shall determine that any such attorney has already received or been paid a sum in excess of the fair value of his services on such equitable basis, as thus determined, the court shall have power to direct him to refund such excess. [¶] For the purposes of this section, the term 'estate' shall be deemed

in its original form. Whatever may be the continued vitality of the so called "benefit conferred" rule in cases arising under § 39A (see *Brayton* v. *Stoughton,* 335 Mass. 321, 326-327 [1957]; *Lane* v. *Cronin,* 345 Mass. 52, 54 [1962]), the knowledgeable writers on the subject are clear on the point that one of the purposes of § 39B was to abrogate so much of the decision in the *Miller* case as required that services of counsel which are not rendered to an estate must be of some benefit to the estate as a condition of their being paid for out of the estate. See Richter, Probate Fees: The Story of a Remedial Statute, 32 B.U. Law Rev. 54, 59-62 (1952); Newhall, Settlement of Estates, § 33, and n. 18 thereto (4th ed. 1958).[13] There is nothing on the face of § 39B which stands in the way of its intended purpose, and we do not think we would be warranted in implying any such condition as that contended for by Loew on the exercise of the powers granted to probate judges under that section.[14]

to include trusts, guardianships, conservatorships and all other relationships involving the administration of property by fiduciaries." The fourth paragraph was added by the 1951 amendment. This section would not seem to have any direct application to the present proceedings (but see note 14, *infra*) because none of the services rendered in the instant cases were "rendered to the estate or to its representative or to a devisee, legatee, distributee or any other person interested therein" within the meaning of the first sentence of the section. Indeed the success of some of the asserted claims was grounded in large measure on the proposition that the securities in question were not parts of the Bowser estate. See 2 Mass. App. Ct. at 460-462.

[13] Both the authorities here cited were cited with apparent approval in *Golden* v. *Taft,* 344 Mass. 152, 156, n. 3 (1962); they were among the "authorities cited" which were referred to in the citation of the *Golden* case which appears in *Hurley* v. *Noone,* 347 Mass. 182, 190 (1964). Richter was an author and the original sponsor of the bill which eventuated as § 39B (see note 7, *supra*). We add that we see nothing contrary to our conclusions in the Grinnell note (36 Mass. L. Q. 38, at 52. [No. 2, July, 1951]) which is also cited with apparent approval in the *Golden* case.

[14] We think the only significance of the reference to § 39A which appears in the fourth sentence of § 39B (note 4, *supra*) is that counsel who seek awards of fees and expenses under § 39B must follow the procedures set out in the second paragraph of § 39A. It was for this reason, we think, that the petitioning counsel in the present cases employed the form prescribed under G. L. c. 215, § 30, for use under § 39A.

First National Bank of Boston *v.* Sullivan.

We hold that the judge has the authority to award the requested counsel fees and expenses out of the Bowser estate under the provisions of G. L. c. 215, § 39B, as amended.[15]

In order to avoid any misunderstanding of our holding, we repeat that the only question which has been reported to us and which we have considered is that of the authority of the judge to award the requested fees and expenses out of the Bowser estate in the circumstance of these particular cases. We assume that in the sound exercise of his "discretion as justice and equity may require" (first sentence of § 39B) the judge has considered, and will consider, the fact that none of the services rendered or expenses incurred in these cases has resulted in any real benefit to the Bowser estate except in the sense that the resolution of these controversies has clarified the question of what assets belong to the estate and has facilitated the distribution of the true residue of the estate. See *Mulcahy v. Boynton,* 341 Mass. 171, 178 (1960), and *Ronan v. Naumkeag Trust Co.* 361 Mass. 892 (1972), both of which were decided with reference to § 39B.[16]

---

See the Richter article, at 63. We reject any notion that § 39B's reference to § 39A was intended to import the "benefit conferred" rule of the *Miller* case as a condition on the exercise of the powers granted under § 39B.

[15] Although the parties have referred in their respective briefs to the "as justice and equity may require" standard for the exercise of a probate judge's discretion under G. L. c. 215, § 45, and have noted the identity of that standard to the one found in G. L. c. 215, § 39B, no one has argued the question whether § 45 itself could be the source of the basic authority to make the requested awards of fees and expenses in the circumstances of these cases. Accordingly we have concentrated on §§ 39A and 39B, which the parties have argued. We have in mind that § 45 "is to be construed with the provisions of . . . §§ 39A and 39B." *United Tool & Industrial Supply Co. Inc.* v. *Torrisi,* 359 Mass. 197, 199 (1971). All we say, without complete consideration, is that in the circumstances of these cases we see nothing in § 45 which stands in the way of the conclusion we have reached under § 39B. See and compare *First Natl. Bank* v. *Perkins Inst. for the Blind,* 275 Mass. 498, 503 (1931).

[16] Loew has not quarreled with the judge's findings as to the fair and reasonable values of the services and expenses in question. No such is-

### THE PROPOSED JUDGMENTS AFTER RESCRIPT.

Although he physically appended copies of his proposed judgments after rescript to his findings and form of report, the judge did not actually report to us any question concerning the content of those judgments. The claimants briefed certain questions; Loew, quite properly, did not.[17] We detected certain difficulties with the proposed judgments and, at the argument, in the hope of avoiding further litigation (compare *Wellesley College* v. *Attorney Gen.* 313 Mass. 722, 731 [1943]), directed Loew's counsel to brief any questions he might wish concerning the judgments. Counsel did so, and counsel for the claimants have submitted a reply brief. The difficulties with the proposed judgments are technical, administrative in nature, and peculiar to the circumstances of these cases. We deal with them briefly in the Appendix hereof, with the thought that it is enough that the judge and counsel understand our views.

### CONCLUSIONS.

The question reported is answered in the affirmative. The proposed judgments after rescript are to be modified in the respects required by the Appendix hereof and may be modified in the additional respect suggested in the Appendix. Counsel fees and expenses in connection with the present petitions and motion, and in connection with the report, are not to be awarded out of the Bowser estate.

*So ordered.*

#### APPENDIX

1. All references to taxes, the expenses of administration and (where applicable) the expenses of arbitration are to be struck from the paragraphs numbered 2, 3, 8 and 9 of the proposed judgment in No. 1108 for the reason, as decided in the prior case, that none of the disputed securities is a part of the Bowser estate.

---

sue has been reported to us. We were virtually assured by all counsel at oral argument that no appellate review will be sought of the judge's findings of value.

[17] The record suggests that the proposed judgments were prepared by Loew's counsel.

First National Bank of Boston *v.* Sullivan.

2. The paragraph numbered 5 of the proposed judgment in No. 1108 is inadequate and, in several respects, inconsistent with the original decree in that case and with what we decided in the prior case. The original decree, which we affirmed with certain expansions, required Loew to make demand for payment of the Norfolk note (remaining balance $100,000) on both Norfolk and Bay State. We unequivocally ordered that Loew "at his expense, promptly institute and *diligently prosecute to their conclusion* such legal proceedings as may be necessary to *secure payment* of the note if it should not be paid within a reasonable time . . . following the demands for payment" (2 Mass. App. Ct. at 466; emphasis supplied). Simply presenting an execution to Norfolk will not satisfy our command. Without being exhaustive, "diligent" efforts to "secure payment" will require the prosecution of proceedings against Norfolk under G. L. c. 156B, § 105, before Loew can resort to the captive securities of Norfolk. Such efforts will also include proceedings to realize on the Bay State note and mortgage held by Loew as additional security for the Norfolk note. It is too late to argue to the contrary. The present paragraph numbered 5 is to be struck in its entirety. New provisions are to be substituted which will completely satisfy our command. The judge, in the exercise of his discretion, may wish to include an additional provision under which he will retain jurisdiction of this phase of the case and supervision over Loew's good faith efforts to secure payment of the Norfolk note without resorting to any of his collateral.

3. The bank, as the holder of record of the disputed securities of Norfolk, will have to take whatever formal steps are necessary to comply with the restrictions on the transfer of Norfolk shares which are found in its by-laws. See the prior case (2 Mass. App. Ct. at 457-460). However, the successful claimants to those securities are the equitable owners thereof (subject to the presently existing pledge to Loew), and they should have the right to name arbitrators and participate in the conduct of the arbitration proceedings at their expense. The paragraph numbered 8 of the proposed judgment in No. 1108 is to be supplemented to reflect these aspects of the rights and obligations of the successful claimants to the Norfolk securities.

4. The word "with" which appears in paragraph numbered 1 of the proposed judgments in Nos. 1118, 1119, 1120 and 1123 is to be struck and replaced by the word "without."

5. The judge's findings as to the fair and reasonable value of the services and expenses of the respective counsel do not differentiate between the services rendered and expenses incurred in connection with No. 1108 as opposed to the services rendered and expenses incurred in connection with any of Nos. 1118, 1119, 1120 and 1123. If the judge persists in his apparent intention to award counsel fees and expenses out of the estate in the paragraph numbered 11 of the proposed judgment in No. 1108, the paragraph numbered 3 of the proposed judgments in Nos. 1118, 1119, 1120 and 1123 should be struck.