**Shaw SPRAGUE, Sr., Plaintiff,**

v.

**Jeanette SPRAGUE HAGEN and Alan Lindsay, Trustees of the P. Shaw Sprague Trust dated December 28, 1962, Defendants,**

**and**

**Julie Sprague, Julie Hume Talmage, Shaw Sprague, Jr., Zachary Sprague, and the Minor and Unborn Heirs of the P. Shaw Sprague Trust—1962, Parties–in–Interest.**

**No. CIV. 97–258–P–C.**

United States District Court,
D. Maine.

Dec. 6, 2000.

Timothy C. Coughlin, Coughlin & Rainboth & Murphy, Portsmouth, NH, Evans

---

Huber, Kassler & Feuer, Boston, MA, for plaintiffs.

Robert S. Frank, Harvey & Frank, Portland, ME, for defendants.

## MEMORANDUM OF DECISION AND ORDER REGARDING CLAIMS FOR ATTORNEYS' FEES AND EXPENSES

GENE CARTER, District Judge.

Plaintiff Shaw Sprague, Sr. brought this suit against the Trustees of the P. Shaw Sprague Trust—1962 ("the 1962 Trust" or "the Trust"), Alan Lindsay, and Jeanette Sprague Hagen for breach of fiduciary duty, and seeking an accounting of the 1962 Trust activities and removal of the Trustees. Amended Complaint (Docket No. 6). After two days of trial, the parties entered into a Settlement Agreement, which includes a statement of the "Operating Principles of the P. Shaw Sprague Trust of 1962," and agreed that the lawsuit be dismissed with prejudice. The Court now has before it three requests for attorneys' fees and costs. Each of the petitions—filed by Plaintiff Shaw Sprague, Sr. (Docket No. 102), Parties–in–Interest Shaw Sprague, Jr. and Zachary Sprague (Docket No. 96), and Parties–in–Interest Julie Sprague and Julie Hume Talmage (Docket No. 98)—requests that the Court order the Trust to pay the attorneys' fees and costs incurred in connection with this litigation. After full consideration of the arguments asserted by the parties on the pending motions, the Court will deny Plaintiff Shaw Sprague, Sr., Parties–in–Interest Julie Sprague and Julie Hume Talmage, and Parties–in–Interest Shaw Sprague, Jr. and Zachary Sprague's requests for attorneys' fees and costs.

### I. FACTS.

Defendants Alan Lindsay and Jeanette Sprague Hagen are co-trustees of the 1962 Trust, having been appointed in October 1994. The trust was established by P. Shaw Sprague, father of Plaintiff Shaw Sprague, Defendant Jeanette Sprague Hagen, and Party–in–Interest Julie Sprague.[1] The 1962 Trust holds 50% of the shares in the Black Point Corporation, which in turn holds all of the shares of the Sprague Corporation. The three children of P. Shaw Sprague's first marriage, Phineas Sprague, Millicent S. Monks, and Lucy Sprague Foster, own the remaining shares in the Black Point Corporation. The Sprague Corporation holds approximately 2200 acres of real property in Cape Elizabeth and Scarborough, Maine. Much of the income of the Sprague Corporation comes from a trust known as the 1920 Trust, which was established by the father of P. Shaw Sprague.

P. Shaw Sprague, some years after establishing the 1962 Trust, executed a document entitled "Memorandum of Intentions" concerning, *inter alia,* the 1962 Trust. The Court has already found on summary judgment that the Memorandum of Intentions does not control the interpretation of the Trust but that the Trustees can refer to the statement of intention for guidance. *See* Recommended Decision on Defendants' Motion for Partial Summary Judgment and Counterclaim Defendant's Motion for Separation and to Dismiss (Docket No. 66) at 9–10; Order Affirming Recommended Decision (Docket No. 72).

## II. DISCUSSION

### A. Standard for Trust to Pay Attorneys' Fees and Costs

The 1962 Trust expressly provides that the interpretation, construction, and administration of the trust shall in all respects be governed by the laws of Massachusetts. *See* P. Shaw Sprague Trust—1962, ¶ 13. Under Massachusetts law, the right of a litigant to recover attorneys' fees

---

1. These three siblings are also the children of Jeannette Hume Sprague, the second wife of P. Shaw Sprague.

and costs from a trust is controlled by § 39B of the Massachusetts probate court statute and authorizes, in pertinent part:

When a judgment or decree is entered in a contested proceeding seeking equitable relief or on an account or to determine the construction of a will or of any trust instrument or to determine any question as to the powers, rights or duties of any fiduciary under any written instrument or to determine any question with respect to services rendered by any such fiduciary or the compensation of such fiduciary for such services, the probate court may, in its discretion as justice and equity may require, provide that such sums as said court may deem reasonable be paid out of the estate in the hands of such fiduciary to any party to the proceeding on account of counsel fees and other expenses incurred by him in connection therewith.

Mass. Gen. Laws ch. 215, § 39B.[2] While it is a matter of discretion with the Court to award fees in such a circumstance, at a minimum, the party seeking reimbursement of fees must demonstrate the "the general estate has benefited, as where counsel has been successful in creating, preserving, or increasing the estate." *Miller v. Stern*, 326 Mass. 296, 304, 93 N.E.2d 815, 819 (1950); *Lane v. Cronin*, 345 Mass. 52, 54, 185 N.E.2d 635, 636 (1962). The general benefit to a single beneficiary is not to be equated with a benefit to the estate. *Miller*, 93 N.E.2d at 816. The 1962 Trust has no explicitly stated purpose but, by reference to the settlor's Memorandum of Intentions, the Court concludes that the general purpose of the Trust is to financially benefit the heirs of P. Shaw Sprague and Jeanette Hume Sprague and to hold and support the land at Ram Island Farm in Cape Elizabeth, Maine for the use, benefit, and enjoyment of future generations.

### B. Plaintiff's Application for Attorneys' Fees and Expenses

■ Plaintiff requests that the Trust reimburse him $199,100.61 for attorneys' fees and expenses incurred by him in connection with this litigation. *See* Plaintiff's Application for Attorneys' Fees and Expenses at 1. The Trustees object to the Court ordering the Trust to pay any of Plaintiff's fees and expenses, arguing that there has been no benefit to the Trust as a result of the litigation. None of the other parties take a position with respect to Plaintiff's request.

Plaintiff admits that a number of the problems which precipitated this litigation were particular to him. *See* Plaintiff's Application for Attorneys' Fees and Expenses at 3. In support of his application, however, Plaintiff asserts that a number of other issues affected all of the beneficiaries and that the settlement that resulted from this litigation "inure[s] to the benefit of all the Trust beneficiaries, not just Shaw Sprague."[3] *See* Plaintiff's Application for Attorneys' Fees and Expenses at 7. Plaintiff avoids addressing the only relevant analytical test—whether the Trust was served by the litigation. Thus, even if Plaintiff is correct in his position that the

---

**2.** Defendant requested that this Court act on the fee petitions in place of the Massachusetts Probate Court, *see* Memorandum Concerning the Court's Subject Matter Jurisdiction to Determine Attorneys' Fees Petitions (Docket No. 115), and Plaintiff and the Parties–in–Interest did not oppose the Court continuing to exercise jurisdiction to adjudicate the fee applications, *see* Plaintiff's Concurrence to Defendants' Memorandum Concerning the Court's Subject Matter Jurisdiction to Determine Attorneys' Fee Petitions (Docket No. 117) and

Letter to Court from Attorney McGehee (Docket No. 113).

**3.** The Court notes that none of the other beneficiaries joined with Plaintiff in his lawsuit. Those beneficiaries that joined did so as parties-in-interest in response to Defendant Trustees' Counterclaim. *See* Counterclaim (Docket No. 2). However, with the exception of the Guardian *Ad Litem*, the parties-in-interest took the position at trial that they were dissatisfied with the Trustees.

litigation benefited a majority of the Trust beneficiaries, the Court concludes that their benefit is not equivalent to a benefit to the Trust. Although, conferring a benefit on the Trust certainly serves the Trust beneficiaries, the inverse, implied in Plaintiff's argument, is not always true. That is, assisting the beneficiaries does not necessarily benefit the Trust. On the other hand, the fact that the litigation benefited the majority of beneficiaries does not, in and of itself, prevent the Court from awarding a reasonable fee. As stated above, the primary consideration in determining whether the Trust should pay all or part of the fees and expenses requested is whether there was a benefit to the Trust as a result of the litigation.

Plaintiff argues that the lawsuit assisted the beneficiaries in at least eight specific ways. The Court will consider Plaintiff's proffered reasons that the Settlement Agreement conferred a benefit on the beneficiaries in order to determine whether it, in turn, also benefits the Trust. First, Plaintiff refers to the provision in the Settlement Agreement requiring Mr. Lindsay to step down by June 2001 unless the majority of the Trust beneficiaries vote to have him continue. *See* Settlement Agreement at 1. There is no evidence from which the Court can conclude that Mr. Lindsay was providing service to the Trust that was other than satisfactory. Thus, Plaintiff has not shown that Lindsay's service as Trustee was impairing the Trust such that his resignation will provide an advantage to the Trust.

Plaintiff asserts, however, that Mr. Lindsay's service as Trustee may cause the Trust to be subject to an annual tax under Florida law known as the Florida Intangible Property Tax and that his suit has prevented this from occurring by securing an agreement which provides that Mr. Lindsay would resign if he could not obtain assurances by the Florida Depart-

ment of Revenue by December 31, 1999, that the tax will be less than $4,500 per year for the year 2000 or any subsequent year. *See* Settlement Agreement at 1–2. This issue was not raised in Plaintiff's Complaint. It was raised by Plaintiff for the first time shortly before trial in the final pretrial conference.[4] Plaintiff never moved to amend his Complaint to include this issue and, when raised during trial, the Court did not allow Plaintiff to pursue it. Nevertheless, the Court recognizes the potential adverse consequence this tax may have on the estate. The Trust may benefit from the Settlement Agreement if Florida law requires the Trust to pay the intangible property tax because of Lindsay's Florida residence. Although there may be a benefit to the Trust as a result of Plaintiff's surfacing this issue if the tax is owed, that benefit is not clearly established.

Plaintiff also argues that the suit was brought because of the Trustees' failure to assure that 50% of the Directors of the Sprague Corporation represented the interests of the second family. The Settlement Agreement provides that the Trustees will consider for election to the Board of Directors of Sprague Corporation persons nominated by the beneficiaries of the 1962 Trust, including a person with experience in land management. *See* Settlement Agreement, Attachment B at 1. The Court cannot determine, on this record, the Trustees' role in the selection of members to the Board of Directors of the Sprague Corporation. The Court notes, however, that early in 1999, during the pendency of this litigation, Shaw Sprague, Jr. became a member of the Board of Directors of the Sprague Corporation. This apparently occurred in response to the Sprague Corporation's initiative in early 1998 to enlist participation of the next generation of Sprague family members on Sprague Corporation matters. *See* Affidavit of Alan

---

4. Moreover, the issue arose so late in the litigation that it accounts for only a minute portion of Plaintiff's fees and costs.

Lindsay (Docket No. 108) ¶ 44. As a result, prior to the settlement in this case and for reasons wholly unrelated to this litigation, the second family had already achieved a 50% representation on the Sprague Corporation Board of Directors. In addition, although this provision requiring the Trustees to consider persons nominated by the beneficiaries to serve on the Board of the Sprague Corporation that holds some of the 1962 Trusts assets appears to benefit the Trust, it cannot be determined if this provision will in fact benefit the Trust because it does not compel the Trustees to act on the nominations made by the beneficiaries. Plaintiff has not shown that the Settlement Agreement will confer a benefit to the Trust by accomplishing a greater representation on the Board.

Another issue underlying the lawsuit was Plaintiff's claim that the Trustees failed to communicate with the beneficiaries and made decisions without input from the beneficiaries. To deal with this perception, the Settlement Agreement established a "Communications Committee," the purpose and duties of which, beyond the description inherent in the title, are unknown. *See* Settlement Agreement, Attachment B at 1. In addition, the Trustees have agreed to hold semiannual meetings, submitting in advance an agenda, and to furnish to all beneficiaries, at least annually, a full accounting of the financial state of the Trust including financial statements of Black Point Corporation and Sprague Corporation. *See* Settlement Agreement, Attachment B at 1–2. This provision certainly benefits all beneficiaries and, arguably, as a result, the beneficiaries may elect to make their thoughts regarding Trust business known to the Trustees. There is not, however, any demonstrated benefit to the Trust as a result of this provision.

Plaintiff also charges that requests for long term leases were not being honored. Plaintiff does not specify whether this means that the Trustees failed to respond to his requests for long term leases or whether the Trustees acted upon his lease requests in a manner which was unsatisfactory to Plaintiff. In the Settlement Agreement, the Trustees agree to act promptly on lease requests provided there is agreement among all affected. *See* Settlement Agreement, Attachment B at 2. Although, despite the contingency, this provision may very well benefit the beneficiaries, the Court concludes that there is no clear benefit to the Trust from this provision.

Plaintiff also claims that there was no agreed-upon investment strategy based on advice of professionals. The Court does not know if Plaintiff's charge means that the Trustees failed to execute an investment strategy based on advice of professionals or whether he disagreed with the investment strategy undertaken by the Trustees or whether his charge encompasses both of these issues. The Settlement Agreement provides for an investment plan and utilization of professional investment managers, and it contemplates the establishment of more specific investment goals. *See* Settlement Agreement, Attachment B at 1. There is no evidence in the record to establish that the Trustees were not employing a prudent investment strategy based on the advice of professional investment counselors prior to the litigation. Indeed, the 1962 Trust itself contemplates the Trustees' use of such professionals. *See* P. Shaw Sprague Trust—1962 ¶ 7 ("Trustees shall have and may exercise at any time . . . the [ ] power[ ] . . . to employ . . . investment counsel . . . ."). The Court concludes that Plaintiff has not shown that there is a benefit to the Trust from the agreement to this provision in the Settlement Agreement.

Plaintiff contends that, in the past, the Trust has been involved in "costly disputes regarding the administration of the Trust and its assets." Plaintiff's Application for Attorneys' Fees and Expenses (Docket No. 102) at 11. Plaintiff broadly asserts that the Settlement Agreement provides for mediation in the event of any dispute.

The provision to which Plaintiff refers, in fact, requires mediation only where there are "disputes relating to the Trustees' actions." See Settlement Agreement, Attachment B at 3. Nevertheless, the Court finds that this provision of the Settlement Agreement may, at some future time, be of benefit to the Trust.

Taking Plaintiff's stated reasons into account, the record provides no basis for the Court to order payment of Plaintiff's attorneys' fees and costs. Even though some of the provisions of the Settlement Agreement may, in the future, confer some benefit to the Trust, that benefit has not been established at this time. The Court acknowledges that the Settlement Agreement conferred a modest benefit on the Trust by saving it the additional expense of continuing to defend this matter during trial and, possibly, minimizing the future need to litigate the issues explicitly set out in the Settlement Agreement. The avoidance of additional litigation expense in this case, and possibly others, is an unexceptional benefit that does not warrant the payment of Plaintiff's attorneys' fees and costs by the Trust. The Court will, therefore, deny Plaintiff's Application for Attorneys' Fees and Expenses.

## C. Julie Sprague and Julie Hume Talmage's Application for Attorney's Fees and Expenses

█ The Trust has already reimbursed Ms. Sprague and Ms. Talmage $12,500 for attorney's fees and expenses incurred by them in connection with this litigation. Ms. Sprague and Ms. Talmage now request that the Court order the Trust to reimburse them an additional $13,991.75, representing the balance of their attorney's fees and expenses in this litigation. The Trustees and the Guardian *Ad Litem* object to their request. None of the other parties take a position with respect to Ms. Sprague and Ms. Talmage's request.

For the reasons stated above, the Trust itself did not benefit significantly from the Settlement Agreement. In addition, the essence of the position taken by Ms. Sprague and Ms. Talmage in this litigation was to divide the 1962 Trust into three separate trusts. Their attorney asserted this position in opposing Defendants' Motion for Summary Judgment and a separate Motion to Partition the Trust. In his Recommended Decision, the Magistrate Judge summarily rejected their position as inconsistent with the Trust. Ms. Sprague and Ms. Talmage's attorney continued undeterred to advocate fracturing the Trust as a means of settlement. These efforts were directed at undermining the Trust. Ms. Sprague and Ms. Talmage's actions in this case can in no way be seen as conferring a benefit on the Trust. The Court will, therefore, deny their request for the Trust to pay the additional fees and expenses they claim.

## D. Shaw Sprague, Jr. and Zachary Sprague's Application for Attorneys' Fees and Expenses

█ The Trust has already reimbursed Messrs. Sprague $20,000 for attorneys' fees and expenses incurred by them in connection with this litigation. Messrs. Sprague now request that the Court order the Trust to reimburse them an additional $13,332.70, representing the balance of their attorneys' fees and expenses in this litigation. The Trustees and the Guardian *Ad Litem* object to their request. None of the other parties take a position with respect to Messrs. Sprague's request.

Like Plaintiff, Messrs. Sprague rely on the provisions of the Settlement Agreement in support of their request for attorneys' fees and costs. For the reasons stated above, the Court does not believe that any of the provisions of the Settlement Agreement result in a benefit to the Trust. The Court recognizes that Messrs. Sprague's attorney, Peggy McGehee, spearheaded and steadfastly pursued settlement negotiations during trial. This was, indeed, a difficult undertaking and the Court does not believe that settlement could have been achieved without her professional efforts. Although, the pursuit of,

and ultimate resolution by, settlement conferred a benefit to the Trust, this benefit was not significant enough to justify the award of additional attorneys' fees and costs sought by the petition.

### III. CONCLUSION

Accordingly, it is **ORDERED** that Plaintiff's Application for Attorneys' Fees and Expenses, Parties–in–Interest Julie Sprague and Julie Hume Talmage's Petition for Approval of Payment of Attorney Fees, and Parties–in–Interest Shaw Sprague, Jr. and Zachary Sprague's Motion for Attorneys' Fees be, and they are hereby, **DENIED.**